KELLNY v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Negligence:** CONCURRENT NEGLIGENT ACTS. Where an injury is produced by the concurrent negligent acts of both plaintiff and defendant, the former, as a rule, cannot recover therefor.

2. ———: ———: RIGHT OF RECOVERY. Where, however, the defendant, before the injury, discovered, or by the exercise of ordinary care might have discovered, plaintiff's perilous position, caused by their concurring negligence, and neglected to use the means at his command to prevent the injury, the defense of contributory negligence is not available.

Kellny v. The Mo. Pac. Ry. Co.

3. ——— : ——— : ———. The recovery in the foregoing case does not rest, however, on the ground that the defendant has been guilty of a second and independent act of negligence which is the sole cause of the injury and which must be charged as a separate and independent cause of action, but on the ground that defendant's recklessness and wantonness cannot (on the score of humanity) be excused by plaintiff's contributory negligence.

4. ——— : RAILROAD : PUBLIC STREET : TRAVELER ON TRACK. A traveler turning his vehicle upon a railroad track upon a public street of a city on which he has a right to travel, is not guilty of contributory negligence so as to prevent his recovery for injuries received from a train colliding with him in the rear, because he did not look back for such train, unless by so looking he would have discovered that it was so near that taking into consideration the rate of speed at which he had a right to believe it to be moving and the other surrounding circumstances it was imprudent for a reasonably prudent man to go upon the track.

5. ——— : ——— : ——— : PRESUMPTION. Such traveler has the right to presume that railroads will observe municipal ordinances regulating the speed of their trains, and also to rely on the fact that it is as much the duty of its employes to look out for him on the track as it was for him to look out for the train.

6. ——— : SPEED OF TRAIN : ORDINANCE. The violation of a municipal ordinance regulating the speed of trains is negligence *per se*.

*Appeal from St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

REVERSED AND REMANDED.

*Henry G. Herbel* for appellant.

(1) The court erred in overruling defendant's demurrer to the evidence, interposed at the close of plaintiff's evidence in chief. *Spiva v. Coal Co.*, 88 Mo. 73, and authorities cited under second point. (2) The court erred in overruling defendant's motion for a new trial for the reason that the evidence does not support, but is contrary to, the verdict. *State v. Hunt*, 91 Mo. 490 ; *Powell v. Railroad*, 76 Mo. 82 ; *Mathieson v. Mayer*, 90 Mo. 585 ; *Stepp v. Railroad*, 85 Mo. 233 ; *Braxton v.*

*Railroad*, 77 Mo. 458 ; *Kendrick v. Railroad*, 81 Mo. 521 ; *Waldheir v. Railroad*, 71 Mo. 518 ; *Gurley v. Railroad*, 93 Mo. 450 ; *Rafferty v. Railroad*, 91 Mo. 37 ; *Peterson v. Case*, 18 Am. & Eng. R. R. Cas. 581 ; *Bene v. Jeantet*, 129 U. S. 683 ; *Maloy v. Railroad*, 84 Mo. 276 ; *Muldoney v. Railroad*, 39 Ia. 622. ( 3 ) The court erred in overruling the motion for a new trial, because the verdict is opposed to physical laws, and manifests prejudice and passion on the part of the jury. *Spohn v. Railroad*, 87 Mo. 74 ; *Garrett v. Greenwall*, 92 Mo. 125 ; *Whitsett v. Ransom*, 79 Mo. 260 ; *State v. Woolaver*, 77 Mo. 104 ; *Lockwood v. Railroad*, 6 Am. & Eng. R. R. Cas. 160 ; *Stoher v. Railroad*, 91 Mo. 517 ; *O'Donnell v. Railroad*, 7 Mo. App. 193. ( 4 ) The verdict is excessive, and manifests passion or prejudice on the part of the jury.

*Wm. C. & J. C. Jones* for respondent.

( 1 ) The jury found specially that defendant's engine struck the wagon and ran over plaintiff ; also that the train was running in excess of six miles per hour. ( 2 ) The injury was caused by the excessive rate of speed, and plaintiff is entitled to recover on that ground. *Robertson v. Railroad*, 84 Mo. 122 ; *Bowman v. Railroad*, 85 Mo. 539 ; *Dunn v. Railroad*, 21 Mo. App. 199 ; *Kendrick v. Railroad*, 81 Mo. 522 ; *Persinger v. Railroad*, 82 Mo. 199. Proof of the omission of the statutory duty and of the injury make a *prima facie* case. *Turner v. Railroad*, 78 Mo. 578 ; *Alexander v. Railroad*, 76 Mo. 497 ; *Keim v. Transit Co.*, 90 Mo. 323. See, also, *Kelly v. Railroad*, 88 Mo. 548, and *Taylor v. Railroad*, 83 Mo. 390 ; *O'Connor v. Railroad*, 94 Mo. 157. Running of cars in populated districts at a rate in excess of that prescribed by the ordinance is gross negligence. *Eswin v. Railroad*, 96 Mo. 294 ; *Reilly v. Railroad*, 94 Mo. 600

BRACE, J.—Action for damages for personal injuries; verdict and judgment for plaintiff for five thousand dollars. Defendant appeals.

The petition charged negligence in defendant's employes in managing and operating the train. which caused the injury, specifying failure to ring the bell and running at a greater rate of speed than six miles an hour, in violation of city ordinance. On the first act of alleged negligence no evidence was given. The answer was general denial, and a plea of contributory negligence.

The accident happened in the city of St. Louis on the levee between Christy avenue and Morgan streets. The evidence for the plaintiff tended to prove that the plaintiff was a rag peddler; that in the course of his business he was pursuing his way in a one-horse wagon along the levee in the city of St. Louis, which lies in a general direction north and south, and on which the defendant's track was laid, and on which it was operating its train. He was going north on the levee; near the corner of Christy avenue and the levee, he found the space on each side of the track for a distance of about fifty feet occupied by wagons, leaving an open way between them occupied by defendant's track as the only way for him to pursue his journey unobstructed. He entered this gang-way between the wagons, drove along it, the east wheels of his wagon on the inside of the west rail of the track, and his west wheels on the outside, a distance of about forty or fifty feet when the hind wheel of his wagon was struck by the defendant's engine drawing a train of freight cars going north on its track, and the plaintiff was thrown out of his wagon, onto the west rail of the track in front of or under the engine, which passed over him crushing his left arm and elbow so that his arm had to be amputated, bruising one of his legs, inflicting a cut over one of his eyes, and several

contusions on his back.   That at the time of the collis-
ion the train was going at the rate of about fifteen miles
an hour; that it did not stop but passed on at the same
rate of speed.   That a train of fifteen loaded cars going
north on this grade at fifteen miles an hour could not be
stopped within less than nine hundred feet, and going
at the rate of six miles could not be stopped within
sixty feet, and that a train of eight loaded cars going
four or five miles an hour could be stopped within
thirty feet, and going at the rate of fifteen miles an
hour within from four hundred to four hundred and
fifty feet.   That at the time the plaintiff's wheel passed
inside the track he did not look back south in the direc-
tion from which the train was coming, nor afterwards
before he was struck.

The defendant to sustain the issues on its part
introduced the evidence of the employes engaged upon
the train, the leading witness of whom, John A. Cook,
testified as follows:   "I was a switchman and brake-
man on the Missouri Pacific railway on the ninth day
of July last; remember of an accident occurring on the
afternoon of that day between 4:30 and 5:30 o'clock,
on the levee between Morgan street and Christy avenue;
I was on the rear end of the rear car of a train going
north on the levee at that time and place; I saw a one-
horse wagon with three persons in it standing near the
curb-stone; as the train was passing it, the horses began
to back and backed the wagon up against the last or
next to the last car of the train; I was on the top of the
rear box car at the time, about thirty feet from the wagon
and looking at it; I did not know whether plaintiff was
in the wagon or not; I did not know him at that time;
when we came back I went in to see how seriously he
was injured, but could not learn anything from him as
he couldn't talk and would not tell us anything; the
wagon did not tilt up, the rear wheels backed into the
car and the horses started up again; don't know

whether Kellny fell or jumped out of the wagon; our train went up to Biddle street and came back again in five or six minutes; there were ten or eleven cars in the train—box cars; the train was not moving faster than five or six miles an hour at that time; the rear wheels of the wagon struck the car; the cars were loaded."

Tatley, the brakeman, testified, that he was standing on the front of the engine from the time it left Poplar street and did not notice any team on the track as the engine passed along between Christy avenue and Morgan street; that he was in a position to see one, if there had been one on the track and that the train was running between four and six miles an hour; that he saw the plaintiff's wagon on the west side as he passed.

The fireman and engineer also testified that they were at their posts, observing the track and they did not see plaintiff's wagon on the track, and that it was not struck by the engine.

On cross-examination, the engineer, Lunderberg, testified that he "saw no obstruction between Christy avenue and Morgan street as we went north on the levee; saw none from the bridge to Biddle street. The way was perfectly clear, and if Kellny had been on the track I would have seen him."

The evidence of Donderville, the fireman, was to the same general purport as the others. In addition he testified that the train was loaded with ice and beer, and upon this grade could be stopped to prevent an accident when going at the rate of four or five miles an hour within sixty feet, and going at the rate of fifteen miles an hour "within five carlengths or less, say eighty feet."

It seem to be undisputed that the distance from the bridge to the place of the accident was about four hundred and fifty feet. That there was nothing to prevent the defendant's employes from seeing the plaintiff's wagon on the track (if it was on the track) during

the whole time the train was passing from the bridge to the place where the collision took place.

Upon this state of facts the court upon its own motion gave the following instructions on the main question:

"1.  Under the pleadings and evidence in this case the court instructs you that, at and just before the alleged injury, the plaintiff was not exercising ordinary or proper care to avoid injury or danger; and, therefore, your verdict should be for the defendant, unless you further find the facts to be as mentioned in instruction two.

"2.  If you find from the evidence that in the early part of July, 1886, the plaintiff's wagon was struck by an engine of a train operated at the time by defendant on the levee between Christy avenue and Morgan street; that in consequence thereof plaintiff was run over by said engine and injured; that said wagon was so struck by reason of the fact that said train was then running at a rate of speed greater than six miles an hour, and that if said train had not been running at a rate greater than six miles an hour, the train could have been stopped in time to have averted the said collision with plaintiff's wagon, after defendant's employes in charge of said train had discovered (or by the exercise of ordinary care could have discovered) that plaintiff or his wagon was in danger of being so struck; and, if you so find the facts to be, your verdict should be for the plaintiff."

The second was the only instruction given presenting a theory upon which the jury were authorized to find for the plaintiff and it seems to us that it cuts the throat of the first.  In the first the jury are told as matter of law that the plaintiff was guilty of an act of negligence that contributed to his injury, therefore he cannot recover; nevertheless they were told in the second, that if they find that the defendant committed an

act of negligence which also contributed to his injury, but which would not have done so if it had not been committed, then they will find for the plaintiff.

The whole theory of plaintiff's case was that he was injured by the negligence of defendant in running its train at a greater rate of speed than six miles an hour; that this act was the sole direct cause of his injury; now while to find the fact that, if the defendant had not been running its train at a greater rate of speed than six miles an hour, the injury would not have occurred, is to find a fact tending to prove that the running of the train at a greater rate of speed than six miles an hour was *a* cause of plaintiff's injury, how can it make such excessive running any more than a contributory cause, when plaintiff's act was also there and then present at the same time contributing to the injury? The instruction presents this strange anomaly that, if the jury find that the wagon was struck by reason of the fact that said train was then running at a rate of speed greater than six miles an hour, and by reason of the fact that the plaintiff was negligently on the track, the plaintiff cannot recover, on the ground that defendant's negligence was the sole cause of the injury, because of plaintiff's contributory negligence, but, if they find that if the train had not been running at a greater rate of speed than six miles an hour the plaintiff wouldn't have been struck, then the plaintiff can recover, although the injury was the joint product of plaintiff's act of negligence and this very negligent act of defendant. How can the fact that the injury would not have resulted if the defendant had not committed the act of negligence change the character of the injury which actually did occur as the joint product of plaintiff's and defendant's contributive acts of negligence as assumed in the instructions?

We know of but one exception to the rule that where an injury is the product of the joint concurring

acts of negligence of both plaintiff and defendant the plaintiff cannot recover, and that is an exception made, on grounds of public policy and in the interest of humanity, to prevent and restrain as far as may be a wilful, reckless or wanton disregard of human life or limb, or property, *under any circumstances*, and that is when the injury was produced by the concurrent negligent acts of both plaintiff and defendant, yet if the defendant, before the injury, discovered or by the exercise of ordinary care might have discovered the perilous situation in which the plaintiff was placed, by the concurring negligence of both parties, and neglected to use the means at his command to prevent the injury, then his plea of plaintiff's contributory negligence shall not avail him. This exception proceeds not upon the theory that the defendant has been guilty of another and independent act of negligence which is the sole cause of the injury and which must be charged as a separate and independent cause of action, but upon the ground that the negligence he was then in the very act of perpetrating was characterized by such recklessness, wilfulness or wantonness as that he shall not be heard to say that the plaintiff was also guilty of contributory negligence.

In this case it is contended by counsel for the defendant that conceding plaintiff's theory of the facts to be true, that the evidence tends to show that defendant's employes if they had been in the exercise of ordinary care could have discovered the plaintiff's wagon on the track in time to have prevented the accident, and that it could have been prevented, if they with promptness after such discovery had used the means at their command to stop the train; therefore the sole cause of the injury was the negligence of the defendant in failing to discover the perilous situation of the plaintiff, and thereafter failing to use the means at their command to prevent the injury, and as the plaintiff's

petition did not contain a count charging this negligence
as a separate and independent cause of action, the
plaintiff cannot recover. This view seems on the trial
to have been acquiesced in by counsel for the plaintiff
and adopted by the court, and perhaps led to the
anomalous instruction in the case, and was, we think,
a misapprehension of the principle upon which a recov-
ery is permitted for an injury resulting from concurrent
acts of negligence of plaintiff and defendant, but which
might have been avoided if, after the consequences of
such negligence became apparent to the defendant, or
ought to have been known to him, he failed to use the
means at his command to prevent it. What has been
said is upon the theory that the first instruction ought
to have been given.

But, on the facts in the case, could the court, as a
matter of law, declare that the plaintiff was guilty of
such contributory negligence as to prevent his recovery?
The plaintiff was no trespasser; he was where he had a
right to be, as much right as the defendant; he was pursu-
ing his way along one of the most crowded public streets
of the city, along which defendant's track was laid; he
came to a point in the street where it was blocked by
wagons for a short distance on both sides. The only
way open to him was the space occupied by the defend-
ant's track, and a narrow margin between the wagons
and the track; in order to get over this space to the
open street beyond, a distance, say, about fifty feet, he
turns his team a little to the right, which causes the
right wheels to pass within one rail of the track a short
distance, and in less time, probably, than a minute, he
reaches the open street again, turns to the left, his fore
wheel passes out over the rail, the hind wheel is caught
by the engine before it gets entirely clear of the pass-
way of the train, is "tilted up" and he is thrown under
the wheels, the train running, at the time, at the rate
of fifteen miles an hour. This was the case the plain-
tiff's evidence tended to make. If it be true that the

train was going at the rate of fifteen miles an hour, confessedly he would have gotten clear of the track without injury if the train had only been going six miles an hour. Now, what act of negligence had he been guilty of that warranted the court in declaring, as matter·of law, that he could not recover? That, just before, and while, making his brief passage, he did not look behind him for an approaching train.

When can one be said to be guilty of negligence that will *per se* prevent a recovery because he does not look behind him for a train approaching him from the rear before turning upon a railroad track along a public street, on which he has a perfect right to travel? And whose duty is it simply to make way for such train? We should say, when by so looking, he would have discovered that the train was approaching him at such a distance that probably he could .not, if he got upon the track, move out of its way in time for it to pass him without striking him. He would be guilty of negligence if, upon looking, he had discovered that the train was so near that, at the rate of speed he might expect it was traveling, it would be hazardous for him to turn upon the track, and he is negligent in not looking only because by looking he would have discovered that, taking into consideration the speed he was traveling at, the distance he had to go on the track, the distance he was from the train, the rate of speed he had a right to believe the train was traveling, it would appear to a reasonably prudent man to be dangerous for him to drive on the track.

These are all questions of fact to be passed upon by the jury in the light of the established law, "that the violation of municipal ordinances which regulate the speed of trains is negligence *per se,* and that every person on a public street in a municipality has a right to presume that the railroad will obey such ordinances. *Schlereth v. Railroad,* 96 Mo. 509; *Eswin v. Railroad,* 96 Mo. 290.

It must be remembered that the plaintiff was no trespasser; he was not crossing a railroad track at a point where the train might be run at an unlimited rate of speed. He had but about fifty feet to go. He had a right to rely upon the fact that no train would be run on that track at a greater rate of speed than six miles an hour. That it was as much the duty of the railroad employes to look out for him on the track as it was for him to look out for a train. *Eswin v. Railroad, supra.* The evidence in this record does not show at what gait he was traveling, nor how far the train was behind him when he turned his wheel inside the rail. He may have acted imprudently in attempting to make the passage in the manner, and at the time, he did, but we think the question, whether he did or not, should have been passed upon by the jury in the light of all the facts and circumstances in the case. There are risks which the most prudent man may take; and the plaintiff is not to be barred of recovery if he adopted a course that the most prudent man would have taken under the circumstances. *Kelly v. Railroad,* 70 Mo. 604; *Smith v. Railroad,* 61 Mo. 588; *Meyer v. Railroad,* 40 Mo. 151.

Paraphrasing the language of this court in the last case, it may be said that the proposition is monstrous that, because a man does not "look," although that is not the proximate cause of the injury, he is placed beyond the pale of legal protection. He can be placed beyond the pale of such protection, not simply because he did not look, but because if he had looked he would have discovered such a condition of affairs as that it would have been imprudent for him to pursue the course which he did pursue, and in which he met with the injury. If, by looking, he would not have discovered such a state of affairs, his failure to look cannot be the proximate cause of his injury.

This was evidently a difficult case to try; the plaintiff and his witnesses were Poles, some of whom could

not speak the English language, and the others but imperfectly. From the record here, it is difficult to clearly understand the actual situation at the time the accident happened, but we do not think it was tried on the correct theory, and, if we have been able to properly appreciate the force of the evidence as it appears in this record, an instruction ought to have been given, submitting to the jury the question of plaintiff's alleged contributory negligence, and one submitting the question whether the defendant's employes could, by the exercise of reasonable care, have discovered his situation, and thereafter have stopped the train in time to have prevented the accident. The instructions upon the defendant's theory of the case, as well as the other instructions, are unobjectionable.

For error in the instructions quoted, the judgment will be reversed, and the cause remanded for a new trial, with the concurrence of RAY, C. J., and BLACK, J.; SHERWOOD, J., concurring in the result; BARCLAY, J., not sitting.