WILKINS v. THE ST. LOUIS, IRON MOUNTAIN AND
    SOUTHERN RAILWAY COMPANY, *Appellant*.

1.  **Negligence:** RAILROADS : MUNICIPAL ORDINANCES. Municipal
    ordinances prescribing certain precautions to be observed by rail-
    roads in using its street crossings do not absolve them from the
    exercise of ordinary care in other particulars not mentioned in the
    ordinances but required by the general law of the land to avoid
    injury to those using public crossings where the company's tracks
    are laid.

2.  ———— : ———— : ———— : WATCHMAN. It is a part of the duty of a
    watchman at a public crossing to exercise ordinary care in warn-
    ing persons on or near the crossing of any approach of danger from

passing trains, and this is so although the ordinance prescribing the watchman only requires the presence of one at the crossing "who shall display at the cars in the daytime a red flag and at night a red light."

3. ———. Negligence is the want of that degree of care which an ordinarily prudent person would exercise under like circumstances.

4. **Practice**: INCONSISTENT INSTRUCTION: WAIVER. Where a defendant requests an instruction in a form submitting the question of negligence of deceased as an issue of law it cannot complain that the submission of such issue was inconsistent with plaintiff's instruction in which that question was properly submitted as a question of fact.

5. **Railroad, Operation of**: CONTRIBUTORY NEGLIGENCE. The deceased, who was in charge of a team in the city of St. Louis, left it at some distance from a street crossing and went over the latter in search of a bolt that had dropped from his wagon, and while beyond the crossing defendant's train backed from the north upon and covered the crossing leaving an opening about two feet in width, through which deceased on his return attempted to pass, but was caught and killed by a backward movement of the train. There was evidence that no bell was rung and no whistle sounded before the movement of the train, which caused the accident. *Held* (1) that the deceased might rightly assume that some such signal would be given before the movement was made, and (2) that it could not be said, as a matter of law, that deceased was guilty of contributory negligence in passing through the opening.

6. **Contributory Negligence, When a Matter of Law.** Contributory negligence will be so declared as a matter of law only where no other inference can fairly and reasonably be drawn from the facts in evidence.

7. **Documentary Evidence**: PART COMPETENT: OBJECTION. An objection to the whole section of a city ordinance of which a part is clearly relevant is rightly overruled.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED

THIS action is to recover damages under the statute for the death of plaintiff's husband, who was killed in St. Louis at the Lesperance street crossing of defendant's railroad by alleged negligence in operating the latter. The issues for trial arose upon a general denial of the petition.

The facts of the relationship of the plaintiff and the death of the husband were admitted, but, as an important issue arose on a refused instruction in the nature of a demurrer to the evidence, it will be proper to briefly outline the testimony in so far as it is supposed to establish plaintiff's case. The substance of the evidence given by the principal witness for plaintiff is as follows, viz.: She knew deceased well. On the day he was killed she was standing on the west side of the railway tracks on Lesperance street, at about four or five o'clock intending and waiting to cross the railway tracks there, and to go down to the river; when she first saw Wilkins he was on the east side of the train; she had been standing on the west side of the train about fifteen minutes before the accident happened; during that time the train was standing still, and "they were switching;" the train was "headed" south; "they" were backing up the cars at that time; Wilkins just before he was killed was standing on the east side of the train, near a flat car; there was an opening between the ends of the cars, as he intended or attempted to cross, about as "narrow" as a door; "plenty of room enough for one to go through;" she had been standing there, while this space was there, before Wilkins attempted to go through, five minutes or more. There was no man stationed on the back end of the train, and no men on the top of the cars that were shoved back, north of the street, and no gate across the street there; there was no bell rung or whistle sounded, as "they" moved the train back; the brakeman connected with the train was on the west side of the train, and the watchman was on the same side

"further south," and he was talking with witness and another lady; she saw no other person standing there; the brakeman was standing on the west side of the train close up to the car; when Mr. Wilkins attempted to go through, the part of the train pushed up from the south crushed him; Wilkins' legs were broken and his stomach crushed.

On cross-examination witness said that she knew this crossing well, and had been over it frequently; that at the crossing there is a plank road over the same half as wide as a street; that she had seen the cars back up before and make an opening for teams to go through, and had frequently seen an opening at said crossing between the cars of twenty-five or thirty feet in width, so that people could cross there on the plank road; that she had frequently seen the railway employes make the opening there after backing up trains; that, when she first went down there, there was a train on the crossing, and Wilkins was standing on the east side and his team was on the west side; that they were switching cars back and forth there; that she had been standing there ten minutes before the opening was made; that she and another lady were waiting there to go across the track; that she didn't attempt to go through when they made the little opening of about two feet and was waiting for them to make a wider opening; that the opening was so narrow that Wilkins had to go through sideways, and that as he got in front of the draw-bars they came together and crushed him.

The plaintiff then offered several city ordinances to the following effect (giving only their substance) viz.: That defendant should maintain gates and place a watchman at the street crossing in question. That watchmen at such crossings should display at the cars in the daytime a red flag and at night a red light.

That cars, etc., propelled by steam power should not obstruct any street crossing by standing longer than

five minutes and that when moving the bell of the engine should be constantly sounded and a man should be stationed on the top of the car farthest from the engine of any backing train, to give danger signals.

That no freight train should be moved in said city unless well manned with experienced brakemen at their posts, so stationed as to see the danger signals and hear the signals from the engine.

One of defendant's witnesses described the movement of the train in question as follows: The train by which Wilkins was injured was on track 7, in what is called the east yard at the Lesperance street crossing; it was a lot of cars that had been switched from trains that had come off the road; they were engaged in shoving the cars from the south end of track number 7 to the north end in order to make room; there were eighteen cars in said train, part box and part flat cars; he did not see Wilkins till after the accident; the accident happened on track 7; at that time there were eleven cars of said train attached to the engine south of the crossing, and seven cars, that witness had cut off, north of the crossing, and there were more cars north of them; they were going to "shove" these eighteen cars on track number 7 north to make room, and they shoved over all the cars that witness thought the track would hold north of the crossing; witness then pulled the pin between the eleventh and twelfth cars; the cars were then moving very slowly onto the crossing; he gave the engineer a signal to stop—to reverse the engine and stop the cars that were attached to it; and that as he did that, the cars that he cut off came in contact with the north end of track number 7 and stopped, but did not clear the crossing plank, leaving a space of eighteen inches or two feet; witness was standing at this time a little south of the center of the cars, about fifteen feet from the opening; the switchman, Barrett, was standing about ten feet due south of witness; after

witness discovered that the cars had only made an opening of about two feet, instead of making an opening, as he intended, of about thirty feet—so as to make a passway for teams—he gave the engineer a signal to back up again ; so as to make an opening the width of the crossing planks—for teams to pass over ; the engineer obeyed his signal to back up, moved the cars north, and witness then heard a man halloo, and saw a man's leg hanging between the cars ; at the time he thinks he was looking at the opening between the cars ; he was standing on the west side of the opening, but he could not see clear through the opening between the cars to the east side ; the cars had not been stopping but a few seconds before the accident, and just before the accident he gave the signal to the engineer to back up ; the engine was at the south end of the train and headed south ; when the engineer reversed his engine, as the cars were going north, the cars attached to the engine struck the cars north with a kind of "dash."

There was a verdict for plaintiff and judgment accordingly, from which defendant appealed after making the usual motions and saving its exceptions in due form. The instructions and other facts material to the case will appear in the opinion of the court.

*Bennett Pike* for appellant.

(1) The court committed error in overruling defendant's demurrer to the evidence at the close of the plaintiff's case. *Stillson v. Railroad*, 67 Mo. 676 ; *Wyatt v. Railroad*, 6 Best & Smith, 709 ; *Railroad v. Pinchin*, 13 N. E. Rep. 677 ; *Railroad v. Copeland*, 61 Ala. 376 ; *Lewis v. Railroad*, 38 Md. 588 ; *Railroad v. Dewey*, 26 Ill. 258 ; *Cooper v. Railroad*, 33 N. W. Rep. 541 ; *Grooms v. Railroad*, 67 Maine, 100 ; *McMahon v. Railroad*, 39 Md. 437 ; *Lewis v. Railroad*, 24 N. J. L. 824 · *Wilds v. Railroad*, 29 N. Y. 315. (2) The court

erred in modifying defendant's instruction, and in giving it, as modified, to the jury. ( 3 ) The court erred in giving the instruction asked by plaintiff. *Gessley v. Railroad*, 26 Mo. App. 156; *Cocker v. Cocker*, 2 Mo. App. 451; *Butcher v. Death*, 15 Mo. 271; *Abbot v. Railroad*, 83 Mo. 271. ( 4 ) The court committed error in refusing to give defendant's instructions as asked. ( 5 ) The court committed error in admitting testimony offered by plaintiff against defendant's objection. *Jennings v. Railroad*, 94 Mo. 394.

*Taylor & Pollard* for respondent.

( 1 ) The court did not err in overruling defendant's demurrer to the evidence at the close of the plaintiff's case. *First.* On the case made by the evidence, according to the great weight of authority, both in this country and Great Britain, it was properly submitted to the jury. *Grant v. Railroad*, 2 MacArthur, 277 ; *Fitzpatrick v. Railroad*, 35 Md. 32 ; Shear. & Redf. on Neg. [ 4 Ed.] secs. 92 and 479 ; *Baum v. Fryrear*, 85 Mo. 151 ; *Karle v. Railroad*, 55 Mo. 484 ; *Werner v. Railroad*, 81 Mo. 368 ; *Petty v. Railroad*, 88 Mo. 306 ; *Keim v. Railroad*, 90 Mo. 321-2 ; *Huckshold v. Railroad*, 90 Mo. 555 ; *O'Connor v. Railroad*, 94 Mo. 150 ; *Dunkman v. Railroad*, 95 Mo. 241-4 ; *Kelly v. Railroad*, 95 Mo. 284-6 ; *Sullivan v. Railroad*, 97 Mo. 118 ; *Railroad v. Stumps*, 69 Ill. 409 ; *Railroad v. Shearer*, 58 Ala. 672 ; *Robinson v. Railroad*, 48 Cal. 409 ; *Kellogg v. Railroad*, 26 Wis. 223 ; *Correll v. Railroad*, 38 Iowa, 120 ; *Kanowiski v. Railroad*, 24 N. W. Rep. 801 ; *Humphreys v. Armstrong*, 56 Pa. St. 204 ; *Filer v. Railroad*, 49 N. Y. 47 ; *Foy v. Railroad*, 18 C. B. ( N. S.) 225 ; *Clayards v. Dethick*, 12 Q. B. 495. *Second.* Moreover, defendant, by offering evidence after its demurrer was overruled, thereby waived it, and it cannot now insist that the court erred, even if in fact it did, which we deny. *Bowen v. Railroad*, 95 Mo. 275 ;

*Kelly v. Railroad*, 95 Mo. 279; *McPherson v. Railroad*, 97 Mo. 253, and many other decisions by this court. *Third.* Passing through the gap between the cars in the public street, under the circumstances, was not negligence *per se* on· the part of the deceased. Shearman & Redfield on Negligence [4 Ed.] sec. 479, pp. 287–8; *Grant v. Railroad*, 2 MacArthur, 277; *Fitzpatrick v. Railroad*, 35 Md. 32. The case at bar is clearly distinguishable from the *Stillson case*, as we will show in argument. ( 2 ) The court did not err in modifying defendant's instruction, nor in giving it, as modified, to the jury. ( 3 ) The court did not err in giving the instructions asked by plaintiff. *Frick v. Railroad*, 75 Mo. 542, 595; *Brown v. Railroad*, 50 Mo. 461; *Hicks v. Railroad*, 64 Mo. 439. ( 4 ) The court did not err in refusing to give defendant's instructions as asked. ( 5 ) The court did not commit error in admitting testimony offered by plaintiff against defendant's objection. Failure to comply with certain ordinances of the city was one of the acts of negligence, but not the only one alleged in the petition and proved at the trial. Had these been observed Wilkins probably would not have been killed. It follows that their admission in evidence was proper. *Merz v. Railroad*, 14 Mo. App. 459; *Kelly v. Railroad*, 18 Mo. App. 156; *Petty v. Railroad*, 88 Mo. 306; *Drain v. Railroad*, 86 Mo. 582. ( 6 ) The record shows that justice was done in the finding of the jury and the rendition of the judgment. It is a well-settled doctrine in this state, when from the whole case it appears that justice has been done, though errors were committed which did not materially affect the merits, the court will not disturb the verdict. *Walter v. Cathcart*, 18 Mo. 256; *Smith v. Culligan*, 74 Mo. 388; *Drain v. Railroad*, 86 Mo. 582.

BARCLAY, J.—The theory on which the circuit court submitted the cause to the jury is best exhibited by the instructions given, which were these, viz.:

### FOR PLAINTIFF

"1.   The court instructs the jury that it was the duty of the defendant's flagman, and its agents and servants, in the management of its locomotive and train under their charge, to exercise reasonable care and precaution, to prevent any injury to persons upon the tracks of defendant, and any failure on their part to exercise such care and precaution would be such negligence as to make the defendants liable for any injury to plaintiff's husband resulting from such negligence, unless the jury further believe from the evidence that the negligence of the said husband of plaintiff contributed directly to the injury sustained by him; and, in passing upon the question as to whether the flagman and agents and servants of the defendant were or were not negligent in the conducting and managing of the locomotive and train at said crossing, you should take into consideration all the facts and circumstances, as proved by the evidence to have existed at the time when and the place where the injury occurred; and you should give to each fact and circumstance and to the testimony of each witness such weight only as you may deem such fact, circumstance or testimony entitled to, in connection with all the evidence in the cause.

"2.   By the term 'negligence,' as used in the instructions, is meant the want of that degree of care that an ordinarily prudent person would have exercised under the same circumstances.

"If you find for the plaintiff, you will assess her damages in your verdict at the sum of five thousand dollars."

### FOR DEFENDANT.

"3.   If the jury find from the evidence that the deceased husband of plaintiff knew, or, by the exercise of ordinary care and prudence, would have known, that

the train by which he was injured, at the time he intended to cross defendant's track at Lesperance street crossing, was moving, or in the act of moving, and he attempted to cross the track between the ends of two cars belonging to said train, separated about two feet apart then the fact (if they find it to be a fact) that there were no gates at the crossing, no brakeman stationed on the car farthest from the engine, and that the watchman was not at his post, and that no bell on the engine was ringing, is immaterial."

FOR DEFENDANT, BUT MODIFIED BY THE COURT.

"4. If the jury find from the evidence that the deceased husband of the plaintiff, at the time he was crushed by the cars of the defendant, was attempting to cross a track of defendant, at the Lesperance street crossing, by going between the ends of two cars of defendant then standing on said track about two feet apart, and that the employes of defendant in charge of the train of cars, of which·said two cars formed a part, were attempting, at the time, to separate the parts of said train at said crossing, so as to make a passage over said crossing for teams and vehicles, and that said deceased knew, or by the exercise of ordinary care, could have known, that said employes of defendant were at the time attempting to move said train, so as to make a crossing, as above stated, *and that said cars between which said deceased attempted to pass were liable to be shoved or pushed together suddenly*, then there can be no recovery in this case, and the verdict will be for the defendant."

The words italicized in the last instruction were added by the court against defendant's exception. The rest of it was asked by defendant.

I. It will thus be seen that the main issue put to the jury was whether the death of plaintiff's husband was the result of a breach of any of the duties which the court declared rested on defendant's agents in charge

of the train and its flagman to exercise reasonable care to prevent damage to persons on the tracks of defendant at the street crossing in question. Defendant insists that this issue was not tendered by the petition and that only the breach of the ordinances constitutes the cause of action alleged.

Undoubtedly the ordinances prescribe certain precautions to be observed by railway operatives and forbid certain other acts to be done by them, but the effect of such enactments is not to absolve the company from the observance of ordinary care (in many particulars not mentioned in ordinances but defined by the general law of the land) to avoid injury to those who use the public crossings where its tracks are laid.

The petition recites certain sections of the ordinances of St. Louis as having been violated, but it also alleges that the death of deceased was caused by the negligent movement by defendant of the freight car that struck him and a breach of duty in that regard on the part of the flagman, and train operatives, whose duties are set forth at some length and fairly embrace those mentioned in the plaintiff's first instruction.

It is further claimed that that instruction is erroneous "because it imposes a degree of care upon the flagman and the servants of defendant in charge of said train that the law does not require; that there is no duty imposed by law upon the flagman and engineer and firemen and brakemen to exercise care to prevent any injury to persons upon the tracks of the defendant; that the first and only duty of the flagman is to do what the ordinance requires (the common law not requiring the presence of a flagman at a crossing), that is to be at the crossing in the daytime and display his flag thereat."

We do not assent to this proposition. As has already been intimated, duties devolve on operatives of a train (in many varying circumstances not referred to

in ordinances ) to avert injury to persons on the railway track, and the same observation is applicable to the watchman or flagman at such crossings. It is true that the ordinance requires the presence there of a watchman " who shall display at the cars in the daytime a red flag and at night a red light." But it is neither in harmony with the letter or spirit of such legislative language to say that it means he shall do no more than hold his flag by day or lantern by night. Looking merely at the words of the ordinance, he is first of all a " *watchman*, " one set to espy the approach of danger and give an alarm or notice of it, as defined by one lexicographer. The flag or lantern might aid him in giving the alarm, but either would be of little avail if he did not act the part of watchman in their use.

Considering the spirit and purposes of the ordinance it is evident that such a watchman's duty includes the exercise of ordinary care in warning persons on or near the street crossing of any approaching danger from passing trains. We think the instruction in question correctly defined the measure of duty resting on defendant's agents at the crossing as applied to the facts and under the pleadings of this case. It also submitted to the jury the question of the contributory negligence of deceased as one of fact, and there was a finding in plaintiff's favor on that issue. We shall have occasion to discuss that phase of the case later on.

II. The definition of negligence contained in the second instruction given for plaintiff was not erroneous in view of what has been already said regarding the proper issues in the cause and of prior decisions of the court as to what constitutes negligence.

III. The instruction asked by defendant and modified by the court was properly refused in its original form. Knowledge by deceased that defendant's employes were about to move the train so as to make a crossing would not, in the circumstances mentioned in

that instruction (above copied), constitute negligence as a matter of law. The instruction as finally given by the court was quite as favorable to defendant as in strictness it could demand, to say nothing more. And, as defendant requested the instruction in a form submitting the question of negligence of deceased as an issue of law, it cannot complain that the submission (in the circumstances here shown) of such an issue was inconsistent with the plaintiff's first instruction in which that question was properly submitted as one of fact.

IV. We next consider the ruling of the trial court refusing defendant's request for an instruction that plaintiff could not recover. Defendant contends that it should have been given for the reason that the deceased was guilty of such contributory negligence as bars recovery.

We pass all questions raised regarding the form in which that issue was presented and consider its merits. An outline of the salient facts is given in the statement preceding this opinion. We need touch upon only some of them here. It appeared that deceased, who was in charge of a team on Lesperance street, left it at some distance west of the crossing in question, went eastward across it to get a bolt or rod that had dropped from his wagon, and while there the train backed upon and covered the crossing on track number 7 where the accident occurred. From the evidence of defendant's witnesses, it seems that the train consisted of eighteen cars which were "shoved" north by an engine until the switch foreman pulled a coupling pin between the eleventh and twelfth car and had the engine stop by signal. This left in motion the seven cars north of the uncoupling point, and soon the cars on that part of the track struck the north end of it (number 7) and came to a stand. But the opening thus left at the street crossing was only as "wide as a door," or "some two

feet," as variously described by witnesses. Through this opening, deceased undertook to pass but was caught and killed by a backward movement northward of the engine and train of eleven cars. This movement is said to have been made with the object of pushing the loose train of seven cars closer together toward the north, but, as it was evident that an opening for the purpose of clearing the street was to be made, a forward movement of the engine and train of eleven cars was much more likely to be anticipated by a looker on, than the movement that was actually made. There was evidence that no bell was rung or whistle sounded before the movement of the train in question. Deceased might rightly assume that some such signal would be given before the movement was made. *Meek v. Railroad*, 38 Ohio St. 632 ; *Correll v. Railroad*, 38 Iowa, 120. He had left his team in the street and was anxious to return to it. Defendant's watchman gave no warning of danger, and in all the circumstances we do not think his act in passing through the opening can properly be pronounced negligence as a matter of law. Such a ruling can be made only where no other inference can fairly and reasonably be drawn from the facts in evidence.

V. There was abundant evidence that defendant was negligent in several particulars under the ordinances and general law, and we find no substantial error in the rulings on the admission of testimony. Defendant objected to the admission in evidence of the ordinance requiring gates and a watchman at the crossing in question. The absence of gates was not submitted by the court to the jury as bearing in any way on defendant's liability ; but the conduct of the watchman had a decided relevancy to the issues tried.

The objection was to the whole section of the ordinance, of which a part was thus clearly revelant. Had defendant requested an instruction to disregard

the portion now claimed to be irrelevant, a different question would be presented, but no such request was made. We think there was no error in the ruling of the court on this point.

The case appears to have been tried fairly and carefully. We affirm the judgment, all concurring.