## J. W. EDWARDS, Respondent, v. CHICAGO & ALTON RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, April 15, 1902.

1. **Personal Injuries:** CITY ORDINANCE AGAINST RUNNING TRAINS ABOVE CERTAIN SPEED: NEGLIGENCE. Where a city ordinance prohibits the running of trains inside the corporate limits at a higher rate of speed than eight miles an hour, the running of a train at thirty-five miles an hour, constitutes negligence.

2. ———: FLAGMAN: TRAVELER: NEGLIGENCE. A railroad company's flagman at a street crossing, who was not on guard as the traveler approached the crossing, and who gave no signal of danger until he was in great danger, was, because of his inattention, guilty of negligence.

3. ———: NEGLIGENCE OF FLAGMAN. The flagman suddenly appeared at the street crossing, and told the traveler to hurry across the tracks, notwithstanding a train was then approaching at a high rate of speed, and so close as to make it hazardous to drive on the track. *Held*, that the direction to respondent was negligence for which appellant was responsible.

4. ———: NEGLIGENCE OF ENGINEER. The engineer testified that he first saw the plaintiff when the engine was between one and two hundred feet from the crossing, that he did not look again until it was within fifty or seventy-five feet when he applied the brakes; the train was running eight or ten miles an hour, that he could have stopped it within seventy-five feet if its speed was eight miles an hour. *Held*, that the evidence tended to show the engineer was negligent in failing to take proper steps to stop the train and avert the accident after discovering the respondent's peril.

5. ———: DEMURRER TO EVIDENCE: PARTIAL ABSTRACT OF EVIDENCE. As none of the evidence introduced by defendant or in rebuttal by plaintiff was contained in the abstract of the record (although preserved in the bill of exceptions), the court will not

review the action of the trial court in refusing to give a peremptory instruction to the jury to return a verdict in favor of defendant, for *the reason*, that in order to determine its correctness, the whole evidence must be considered.

6. ———: FLAGMAN'S DUTY: CONTRIBUTORY NEGLIGENCE OF RESPONDENT. In an action against a railroad company for injuries at a street crossing, it appeared that the flagman was not on guard when respondent approached; that respondent crossed several tracks of another company without seeing any train, and when a few feet from appellant's tracks observed a train coming but did not know its distance from him, or its rate of speed; that at the same time the flagman appeared, and directed him to hurry across, which he did, almost clearing the track when the train struck the rear of his wagon. *Held*, that the respondent was not guilty of contributory negligence as a matter of law, in obeying the flagman's signal to cross.

7. ———: INSTRUCTIONS MUST BE READ TOGETHER. An instruction that respondent had a right to rely on the warning of a flagman stationed at the crossing and if the flagman failed to warn him not to cross, the respondent was entitled to recover although he saw the train near and rapidly approaching, is not objectionable when other instructions directed the jury to find that respondent was in the exercise of ordinary care, before he could recover, and moreover, told the jury distinctly that respondent could not recover if he knew the train was approaching and had the same means of judging of the danger, that the flagman had.

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes,* Judge.

AFFIRMED.

*F. Houston* for appellant.

(1) It was the duty of respondent to stop, look and listen, before driving on the tracks on which he saw a train rapidly approaching. His testimony shows he looked once when fifty yards from the track on which train was, and did not look again until the train was nearly on him, because, not seeing the flagman, he assumed that it was safe. In Schneider

v. Railroad, 9 Amer. Neg. Reps., 74-77, the defendant had neglected to maintain either gates or flagmen, but the plaintiff could have seen the train, and neglecting to do so, was held guilty of contributory negligence. In Edward's case the train was in full view for from a quarter to a half a mile, but he did not see it and deliberately drove across the tracks immediately in front of it, knowing he was taking chances in so doing. He miscalculated the speed of the train just as Schneider did. Green v. Railroad, 9 Amer. Neg. Reps. 103; Showalter v. Fairbanks & Co., 88 Wis. 376; Hutchinson v. Railroad, 161 Mo. 246; Skipton v. Railroad, 82 Mo. App. 154. (2) Appellant has printed an abstract of the record, containing the petition, answer, reply, bill of exceptions, etc., under these heads for convenience of reference. The whole bill of exceptions is not printed, but only an abstract of such portions as are necessary. Nolan v. Johns, 126 Mo. 159.

*P. H. Cullen* and *J. S. McIntyre* for respondent.

(1) When the abstract fails to set forth an abridgment of all the evidence in the cause the court on appeal will not consider an assignment that the verdict is without evidence to support it. Nichols v. Nichols, 39 Mo. App. 293; Goodson v. Railroad, 23 Mo. App. 76; State v. Pace, 33 Mo. App. 458; Glenn v. Weary, 66 Mo. App. 75. (2) The same rule applies where the appellant complains that a peremptory instruction should have been given or was refused. Grocery Co. v. May, 80 Mo. App. 303; Christopher v. White, 42 Mo. App. 428; Johnson v. Carrington, 120 Mo. 316; Bowlin v. Creel, 63 Mo. App. 229; Jayne v. Wine, 58 Mo. 404. (3) The plaintiff did not know and could not discern the rate of speed at which the train was approaching, hence had the right to presume that the train was being run at a lawful rate of speed, and the undisputed evidence shows that if train had been running at the legal rate of speed the collision would not have occurred.

This cause comes directly within the rule and the reason of the rule recently so cogently laid down by the Supreme Court. Hutchinson v. Railroad, 161 Mo. 246, and cases there cited; Railroad v. Dunn, 78 Ill. 197; Dolan v. Canal Co., 71 N. Y. 285; Glasburg v. Shorpe, 96 N. Y. 676; Threlkeld v. Railroad, 68 Mo. App. 127; Kleber v. Railroad, 107 Mo. 261; Wilkins v. Railroad, 101 Mo. 93; Jennings v. Railroad, 112 Mo. 268; Gratiot v. Railroad, 116 Mo. 450.

GOODE, J.—Respondent was injured by a locomotive drawing a train of cars on one of appellant's tracks in the city of Mexico as he was driving a wagon and team over it at a public crossing where there were eight tracks running east and west, four on the south belonging to the Wabash Railway Company, then one transfer track connecting the Wabash and the tracks of the Chicago & Alton Railway Company, then three Chicago & Alton tracks, the middle one of these being the main line and the one on which the respondent's wagon was struck. A watchman had been kept for a long time by the appellant company at that point and a shanty built to shelter him, which was located between the south, or third, Chicago & Alton track and the transfer track and just to the east of the crossing. Said crossing is where Jefferson street, one of the main thoroughfares of the city, intersects the railroad.

The respondent was driving northward early in the afternoon with a load of wood and crossed the four Wabash tracks without noticing a train, seeing the watchman, or receiving any warning. He had proceeded northward until his vision took in the north side of the flagman's house before he noticed a train, when he discovered one coming from the east on the main line, which was then ten feet or more to the north of his team, he testified. At that instant the flagman rushed out of the house and shouted to the respondent to hurry over the tracks; whereupon he lashed his team with the lines and almost

succeeded in clearing the middle track, but the engine struck the rear of the wagon or the wood on it, destroying the wagon and injuring the respondent.

The petition accuses the railway company of negligence in four particulars:

First, in running the train which struck the respondent at an unlawful rate of speed; second, the failure of the watchman to give seasonable warning of the train's approach; third, the invitation or direction of the watchman to the respondent to hurry over the tracks when he knew or ought to have known the train was so near as to make that course perilous; fourth, the omission of the engineer and other servants of the appellant in charge of the train to use ordinary care to stop it in time to avoid striking the respondent.

We are of the opinion that evidence was adduced tending to sustain each of the above specifications of negligence.

1.   An ordinance of the city of Mexico was introduced which prohibited the running of locomotives or trains inside the corporate limits of that city at a higher rate of speed than eight miles an hour, and there was testimony that the train which hit the respondent was running at a speed of thirty-five miles an hour.   That act constituted negligence on the part of the defendant.   Hutchinson v. Railroad, 161 Mo. 246, and cases therein cited.

2.   All the testimony contained in appellant's abstract of the record goes to show the watchman was not on guard as the respondent approached the crossing, and gave him no signal of danger until he had crossed the four Wabash tracks and was either over, on, or close to, the first of the Chicago & Alton tracks and in a very dangerous position, considering that he was driving a team which was unmanageable when about railroad tracks and trains.   The watchman's inattention was negligence to be imputed to the company.   Pa. Co. v. Stegeneier Admx., 118 Ind. 305; Central Trust Co. v. Railroad, 27 Fed. Rep. 159; Kleiber v. Id., 107 Mo. 261; Jennings v. Id.,

112 Mo. 268; Dixon v. Id., 104 Mo. 500; Wilkins v. Id., 101 Mo. 93; Wheelan v. Id., 38 Fed. 15; Kessinger v. Id., 56 N. Y. 538; Dolan v. Canal Co., 71 N. Y. 285.

3. The uncontradicted evidence is that after the respondent was in the position of danger stated, the flagman suddenly appeared and told him to hurry across the tracks, although a train was then approaching at a high rate of speed and so close that it was hazardous to drive on the tracks. That direction to the respondent was negligence for which the appellant is responsible. Lunt v. Railroad, 1 L. R. Q. B. 77; Stapley v. Id., L. R. 1 Ex. 21; Chicago, Rock Island & Pac. R. R. Co. v. Clough, 33 Ill. App. 129; Borst v. Railroad, 4 Hun (N. Y.) 346.

4. The engineer, in charge of the locomotive which struck the wagon, testified that he first saw the plaintiff when the engine was between one hundred and two hundred feet from the crossing, but did not look at him again until it was within fifty or seventy-five feet of it when he applied the brakes to stop the train, which was running eight or ten miles an hour, and that he could have stopped it within seventy-five feet if it was running eight miles an hour. This testimony, in connection with the testimony of the plaintiff in regard to the conduct of his team and the fact that they never entirely stopped advancing northward, tended to show a failure on the part of the engineer to take proper measures to stop the train after discovering respondent's peril and thereby avert an accident, which was actionable negligence. Hutchinson v. Railroad, 88 Mo. App. (St. L.) 376; Kellny v. Id., 101 Mo. 67. The engineer probably relied on the flagman to keep the respondent from attempting to cross if there was risk, as did the respondent himself.

5. At the conclusion of the evidence introduced by the plaintiff, the railroad company requested the court to give a peremptory instruction to the jury to return a verdict in its favor, which request was denied, and thereupon it put in proof

to support its defenses and plaintiff introduced rebuttal evidence; but none of the evidence introduced by the defendant, or in rebuttal by the plaintiff is contained in the abstract of the record, although it was preserved in the bill of exceptions.

Appellant's abstract makes the following statement in regard to the matter, after the recital of the ruling of the court on the demurrer to the plaintiff's case:

"Thereupon the defendant offered evidence to sustain the issues on its part and plaintiff offered evidence in rebuttal."

On such a showing it is impossible for us to review the entire evidence and decide whether or not an instruction should have been given to the jury to return a verdict in favor of the defendant at the close of the case. We recently passed on this question, which, indeed, has been often passed on by the appellate courts of this State. Clark v. Railroad, 93 Mo. App. (St. L.) 456.

When a defendant, instead of resting on the evidence of a plaintiff, puts in his own, his case must stand or fall on the evidence as a whole, and if he wishes it considered by an appellate court in order to determine whether or not the plaintiff was entitled to go to the jury, he must present it in such a way that it can be reviewed. Jennings v. Railroad, 112 Mo. 268; Davis v. Vories, 141 Mo. 234; Oglebay v. College of Dental Surgery, 71 Mo. App. (K. C.) 339.

6. But it is insisted plaintiff's own testimony showed conclusively he was guilty of negligence directly contributing to his injury and, therefore, defendant should have been exonerated from liability by a direction to the jury to return a verdict in its favor; and, while we think the appellant is not legally entitled to have this question determined, because the respondent may justly say that all the evidence should be considered in ascertaining whether he was to blame, we have carefully perused the testimony of the respondent and are of the opinion that appellant's position in respect to the effect of it is unfounded.

The proposition urged in this connection is, that as the respondent testified he saw the train approaching, he had no right to act on the command of the flagman to hurry across the track, but was bound in the exercise of good judgment and reasonable care, to wait until it passed. That proposition is not the law, generally speaking, and is certainly not the law to be applied to the facts of this case as testified to by the respondent. For a court to lay down such a rule would be to sanction the grossest negligence on the part of servants stationed by railway companies at dangerous crossings to warn travelers of the approach of trains. They might signal a traveler that he could safely cross, and if he relied on their judgment as experts familiar with the speed of trains and the distance an approaching train should be from a crossing to insure a safe passage, instead of relying on his own untrained judgment, he would be debarred from recovery on the score of contributory negligence. Why have flagmen at all, if that is the law? They are of little use to the public if persons are required to depend on their own faculties and knowledge instead of the flagman's.

But in Dickson v. Railroad, 104 Mo. 500, it was said:

"The object of requiring a watchman to be stationed at the intersection of the improved streets of the city is to prevent travelers from going upon the crossing when trains are approaching. Wilkins v. Railroad, 101 Mo. 93. It would be a work of supererogation to station a watchman at a point to give warning of danger after it is too late to avoid it. It is the duty of such watchman to keep the crossing clear at times of danger, from moving trains."

In Jennings v. Railroad, 112 Mo., supra, the corollary of that principle was ruled in a case where the plaintiff admitted if he had looked down the track he could have seen the moving cars which hurt him; but he did not look and the watchman at the crossing gave no warning. The court held the plaintiff was not lacking in ordinary prudence be-

cause he omitted to look for approaching cars before driving on the track, as it was the watchman's duty to signal if cars were coming.

The right of a person about to cross a railroad, where a flagman is stationed, to rely on the signals of the latter, does not go to the extent of absolutely absolving a traveler from any care whatever for his safety, nor excuse reckless conduct on his part. It merely exacts of him a less degree of care in looking out for trains. Threlkeld v. Railroad, 68 Mo. App. (St. L.) 131. And logically so; because the best precaution a traveler can take in such instances is to keep his eye on the flagman instead of the tracks, and a due regard for his safety demands that he fix his attention where he is most likely to receive warning of danger. The flagman is there to give him notice whether the tracks are clear, and is in a better position to know when they may be crossed; for he is, or should be, stationed where he can command a view of them each way. The rule in regard to the duty of a person about to go on a railroad track at a public crossing to look and listen for trains is modified, therefore, when the crossing is one usually guarded by a flagman so as to allow a passenger to rely in some measure on the flagman's warning. Chicago, Pittsburg & St. Louis R. R. Co. v. Hutchinson, 120 Ill. 587; Chicago, Rock Island & Pac. R. R. Co. v. Clough, supra; Central Trust Co. v. Railroad, supra; Wheelan v. Id., supra. Edwards was watching for signals. He testified he looked for the flagman and did not see him, then looked up and down the tracks both ways and saw no trains and then ventured on the crossing, thinking if any trains were coming the flagman would surely be out attending to his business.

What degree of care must a person use at such guarded crossings to avoid injury? That which ordinary prudence dictates under the circumstances. If the watchman is absent or he receives no warning from him, he is not excused for going forward if a train is in plain view and near enough to

make the attempt to cross rash. If the watchman beckons or tells him to cross, he has a right to act on this invitation unless the danger is so visible and extreme that a man of ordinary prudence would shrink from it. The rule to be followed in such cases is the same as that which governs the use of defective machinery or a defective sidewalk, and permits one injured by such defects to recover damages from those whose duty it was to keep the walk or machinery in a safe condition, unless the hazard of the use would have deterred a prudent man. Chilton v. St. Joseph, 143 Mo. 192; Booth v. K. C. & Independence Air Line, 76 Mo. App. (K. C.) 516.

In the present case, the respondent first saw the train when he was close to the track on which he was hurt, but was commanded to cross by the flagman. The exact question is, therefore, was his obedience to that command a negligent act which shuts him off from a recovery? and that involves the question of whether a person of ordinary prudence would have obeyed, as the circumstances were presented to the respondent's mind at the time. Appellant insists respondent's admission that he saw the train before he got on the track is conclusive proof of contributory negligence—that he was bound to refrain from crossing, notwithstanding the flagman's exhortation to him to hurry over. The effect of respondent's testimony on this point, as stated in various forms of expression, is, that although he saw the train, he neither knew its distance from him, the speed at which it was running, nor whether he could get over safely, but supposed the flagman did as he had often seen him on guard there before; and therefore he relied on the flagman's judgment. Respondent had been brought into a position of peril by the neglect of the flagman to warn him of the approach of the train before he reached a place of danger, and when suddenly confronted with the on-rushing train, he was not bound to exercise the cool and deliberate judgment that would have been due from him if not alarmed or excited. St. Louis, Iron Mountain & Southern

Railway Co. v. Rickman, 65 Ark. 138; Kleiber v. Railroad, supra. In that disconcerting situation he was justified in assuming the watchman's judgment was better than his own about what he should do, and, acting on his command, to hurry across. It would be a harsh and unreasonable ruling to say he was bound to await the passage of the train and that a man of common prudence would have decided on and followed that course. Instead of this being a necessary deduction from the testimony, we think the reasonable inference is that most men would have obeyed the order of the flagman as the respondent did; in fact, the flagman only miscalculated the time slightly, it may be on account of the train's excessive speed; for the wagon was nearly over the tracks when the engine struck it.

The principle on which controversies like this one are to be determined is, that where one person incautiously invites or lures another into a situation of imminent peril and an accident occurs, a case of negligence is made out which gives rise to a cause of action in favor of the victim of the accident; and that principle has been applied in several instances where the facts were not materially different from those in the case at bar.

In Sweeney v. Railroad, 10 Allen, supra, the subject was ably treated in the light of the general principles of the law of negligence and the railway company's duty likened to the duty of owners of premises to have them reasonably safe for occupancy or use by persons invited to go on them, with a correlative liability for injuries caused by their unsafe condition. Here the respondent was no trespasser but had a right to cross the railway tracks on the public highway along which he was traveling, and was induced to attempt to cross in front of the moving train by the direction of a servant of the appellant stationed there for the express purpose of notifying travelers when they could go forward with safety and when they ought to stop. His cause, therefore, falls far within the rule that where one is lured into a place of danger by the negligence of

another, the latter is answerable for the consequences. In the case last cited the plaintiff was hurt by a collision with the defendant's engine while he was crossing its tracks in obedience to a signal given by a flagman. The opinion says:

"These facts well warranted the jury in finding as they must have done in rendering a verdict for the plaintiff under the instructions of the court, that the defendant induced the plaintiff to cross at the time when he attempted to do so and met with the injury for which he now seeks compensation."

In Talbot v. Railroad, 72 Mo. App., supra, the plaintiff was told by a gateman of the train to alight from a platform of a car when the train had stopped, and in doing so was injured by reason of the fact that the depot platform did not extend out far enough for him to step on it. The defense was that he was guilty of contributory negligence in not looking where he was stepping and that he ought to have gone forward to where he could have stepped on to the depot platform. It was ruled the "plaintiff was justified in assuming he could leave the train there, and that there would be no danger in stepping from the car steps at a place designated by the trainman."

In Lunt v. Railroad, supra, the plaintiff was hurt on the company's crossing where a watchman or gateman was stationed, through being induced to venture on the tracks by the direction of the gateman to him to "come along," the gate being open. On these facts it was held that the watchman invited the plaintiff to come across at a time when it was dangerous to do so, "it being the very essence of his duty to open the gate only when it was not dangerous."

Borst v. Railroad, supra, was a case in which the plaintiff was signaled by a flagman to attempt to cross the tracks, and while doing so his horse was frightened by the noise of escaping steam from a near-by engine and caused to shy, throwing the plaintiff out of his vehicle and injuring him. A charge was approved to the effect that when a flagman beckons a passenger who is waiting in the highway for an opportunity

to cross the track, "the traveler has the right to suppose that no change will take place in anything under the control of the railway company likely to increase the danger;" and that passengers have a right to rely on the actions of a flagman, who is indicating to them that there are no trains coming in either direction and in sight.

In Chicago, Rock Island & Pac. Railroad Co. v. Clough, supra, the injured party (Clough) testified as follows:

"The gates were open and the gateman was across the track and he flagged me to come on; well, I whipped up my horse when he flagged me to come on and tried to get across as quickly as I could. When I got flagged across, of course, I thought it was all right and I just whipped up my horse to get across as soon as I could."

That testimony is practically identical with Edwards' in the present case, and an error was assigned because of the trial court's refusal to instruct the jury that plaintiff was under an obligation to look and listen for cars before endeavoring to drive over the tracks; as to which request the Supreme Court said:

"A flagman was stationed at the crossing in question and it was his duty to know and give timely warning of the near approach of trains, and appellee and the public had a right to rely upon a reasonable performance of that duty. The refusal of the court to give the instruction was fully justified by the decision of this court in Chicago, St. Louis & Pittsburg R. R. Co. v. Hutchins, 120 Ill. 587, and other cases."

Central Trust Company v. Railroad, supra, was to recover for an accident which occurred in the city of St. Louis. A driver of a team started through a partially raised gate which the watchman had elevated to let another team out; several parties cried to the driver to stop, but he drove on, looking neither to the right nor left, with the result that his team was struck by an approaching engine, which he could have seen,

Edwards v. Chicago & Alton Ry. Co.

the horse killed and the wagon damaged.    On these facts the court said:

"At the crossings in a populous city, where gates and watchmen are provided, passengers and pedestrians have a right to suppose when the gates are open, and no warning to the contrary given by the watchman, that they can proceed with entire safety.   If accidents should happen through the gross negligence of the management of the gates by the watchman connected therewith, prima facie the railway company must answer for the damages sustained.   Trifling matters as to the movements of the passenger or pedestrian in crossing, under such circumstances, can not exonerate the railway company whose duty it was to protect said crossing, and give warning as to the safety thereof."

In Wheelan v. Railroad, supra, the gate of a crossing had been left open and a street car was run on the railroad tracks.    It was ruled that the gate being open, the cardriver had the right to presume it was safe and was guilty of no carelessness in driving through without looking or listening for an engine.

All the foregoing authorities maintain the proposition that a person approaching a railroad crossing where a flagman is wont to be, has a right to obey the flagman's signal to cross, and if a signal is negligently given and the traveler hurt while crossing in obedience to it, the company must compensate him for his injury unless he acted rashly; that is, assumed a risk which common prudence ought to have warned him against.

We have already examined the evidence. in this regard and ruled that it is impossible to say, as a necessary inference of law, that Edwards acted rashly; therefore, the circuit court properly refused to instruct the jury to return a verdict for the defendant.

One direction to the jury is criticised on the ground that it told them the plaintiff had the right to rely on the

Vol 94 app—4

flagman to warn him of coming trains without any limitation or qualification whatever, and that if the flagman failed to warn him not to cross the respondent was entitled to recover, notwithstanding he saw a train near and rapidly approaching. But the instruction is not fairly open to the objection, because it qualified the liability of the defendant by requiring a finding that the plaintiff was in the exercise of ordinary care and was ignorant of the danger of attempting to cross the tracks.   Besides, the court gave another charge which directly told the jury the plaintiff could not recover if he knew the train was approaching and had the same means of judging the danger as the watchman.

That charge is as follows:

"The court further instructs the jury that notwithstanding they may find from the evidence that the watchman ordered the plaintiff to hurry over the crossing, yet if the plaintiff had the same knowledge of the approach of the train, and the same means of judging of the danger of attempting to cross in front of the train, then he is not entitled to recover on that ground of negligence, and you must find for the defendant."

The jury were very carefully and intelligently instructed by the circuit court, and every theory of defense submitted. We see no reason for interfering with the verdict, which in truth was fully warranted by the evidence before us.

The judgment is, therefore, affirmed.   *Bland, P. J.,* and *Barclay, J.,* concur.