JOHN GARNER, Respondent, v. THE HANNIBAL AND ST. JOSEPH RAILROAD COMPANY, Appellant.

*Corporations — Railroads — Pleading.*—A petition against a railroad company which states that the defendant, whilst running its locomotive, &c., negligently, struck the cattle of the plaintiff, &c., shows a good cause of action at common law.

*Practice—Pleading.*—If the petition set forth a good cause of action at common law, other irrelevant allegations may be disregarded, or stricken out as surplusage.

## Appeal from Marion Circuit Court.

The facts are sufficiently stated in the opinion.

The following instructions prayed by defendant were refused :

1. If the jury believe from the evidence that the stock sued for in this case was not in Harmon Hollyman's enclosed

field at the time said stock was struck and killed, as alleged in plaintiff's petition, they will find for the defendant.

2. The jury are instructed that the defendant is not required to fence on each side of its railroad where the same passes through an enclosed field.

3. The jury are instructed that the defendant is incorporated by virtue of an act of the General Assembly of this State, entitled " An act to incorporate the Hannibal and St. Joseph Railroad Company," approved February 16, 1847, and the several acts amendatory thereof, by none of which is defendant required to fence on each side of its railroad.

4. Defendant is not subject to the provisions of the 52d section of the act entitled "An act to authorize the formation of railroad associations, and to regulate the same," approved December 13, 1855, as alleged by plaintiff in his petition.

5. If the jury believe from the evidence that the stock sued for in this cause was killed in Harmon Hollyman's enclosed field, and said railroad was not enclosed by a lawful fence where it passes through said field; and the jury further find that the defendant paid Harmon Hollyman the damages resulting from the location and construction of defendant's railroad through said field, the duty of fencing on each side of said railroad through said field was on said Harmon Hollyman, and not on the defendant, and the jury will find for the defendant.

6. The plaintiff cannot recover in this cause unless he proves that the defendant was guilty of negligence in killing the stock sued for ; and if the jury believe from the evidence that the person in charge of the locomotive which struck said stock tried to scare said stock off the track by blowing the whistle, then the defendant, through its agents, exercised reasonable care and diligence, and they will find for the defendant.

7. If the jury believe from the evidence that the stock sued for were in Harmon Hollyman's enclosed field at the time they were killed, without any authority or license from said Hollyman, said stock was there unlawfully, and the de-

fendant is not bound to fence its road as against said stock, and they will find for the defendant, unless they further find that said stock were negligently killed by defendant's locomotive or cars.

*Pratt & McCabe*, for respondent.

*Carr*, for appellant.

I. Admitting the allegations in the petition to be true, they do not show any legal cause of action against the appellant. The petition is based on the 52d section of what is known as the General Railroad Law, entitled "An act to authorize the formation of railroad associations, and to regulate the same," approved December 13, 1855, (R. C. 1855, p. 437) by which it is provided, that " every corporation *formed under this act* shall erect and maintain fences on the sides of their road where the same passes through enclosed fields, and until such fences and cattle-guards shall be duly made the corporation and its agents shall be liable for all damages which shall be done, by their agents or engines, to cattle, horses, or other animals thereon." The first allegation in the respondent's petition is, that the appellant is " a body politic and corporate, created under and by an act of the Legislature of this State, entitled ' An act to incorporate the Hannibal and St. Joseph Railroad Company,' approved February 16, 1847, and the acts amendatory of the same," which allegation is admitted in the answer. Now, if the appellant was formed under the latter act, then it is not a " corporation formed under this act," *i. e.*, the General Railroad Law, approved December 13, 1855. And if it is not formed under said act, then it is not subject to " the duties, liabilities, and provisions," imposed by the 52d section of said act, requiring " every corporation formed under said act to erect and maintain fences on the sides of their roads where the same passes through enclosed fields," provided such duty of erecting and maintaining fences is " not inconsistent with the provisions of the appellant's charter" on that subject.

II. The appellant, by virtue of its charter, has large and beneficial franchises granted to it, and is under corresponding responsibility to the public as a common carrier of passengers and freight. It is bound to carry for all persons who apply, unless it has a reasonable excuse for the refusal to do so. The company thus becomes a kind of public officers, and owe to the public a general duty, independent of any contract in the particular case. (Red. on Railw. 261.) Thus it is held liable, by virtue of its office, as a common carrier, for all damage and loss to goods during the carriage, from whatever cause, unless from the act of God, which is limited to inevitable accident, or from the public enemy, (*id.* 232,) and to passengers for injury, where there is the " smallest negligence." (*Id.* 323.) The appellant is under paramount obligation to the public to carry passengers and property with speed and safety. It is under secondary obligation to persons living along the line of its railroad so to use its rail cars as not to injure their stock that may trespass upon its railway. (See the very able and learned opinion of the Court of Appeals of Kentucky on this point, delivered by Justice Wood, in the case of Louisville & Frankfort R.R. Co. v. Ballard, 2 Metcalf, 180.)

DRYDEN, Judge, delivered the opinion of the court.

The errors complained of in this case relate, 1st, to the refusal of the court below to arrest the judgment; 2d, to the instructions to the jury given by the court of its own motion; and 3d, to the refusal of instructions asked by the appellant.

1. As to the refusal of the court to arrest the judgment. The motion in arrest was based on the supposed insufficiency of the petition. The petition contains three counts, substantially alike, the first of which is as follows: " Plaintiff states that defendant is a body politic and corporate, under and by the laws of the State of Missouri, and duly organized pursuant to an act of the Legislature of this State, entitled ' An act to incorporate the Hannibal and St.

Joseph Railroad Company,' approved on the 16th day of February, A. D. 1847, and the acts amendatory of the same. That on the first day of January, 1859, and from that time until the institution of these proceedings, the defendant was the owner and proprietor of a certain railroad, known as the Hannibal and St. Joseph Railroad, together with the track, cars, locomotives and other appurtenances thereto belonging; that said road runs through the land of Harman Hollyman, in the said county of Marion, which land is enclosed in a field, and was on that day enclosed in a field, and from the time aforesaid until now; and on that day was in the possession of said Hollyman, and has since and is now used and enjoyed by him, the said Harman Hollyman, at times, as and for a pasture for horses, cattle and hogs, the property of him, the said Hollyman, and of others; and on said day, and since the said —— has kept in said field horses, cattle and hogs, the property of him, the said Hollyman, and of others. Plaintiff says, the defendant, on the said day, and since, has run its locomotives and trains of cars through said field without having erected any fences along the sides of its railroad, through said field, to prevent cattle and animals from getting on the track of said railroad, as is required by the law of this State, which said law was approved at the city of Jefferson, on the 15th day of December, A. D. 1855, and made applicable to the road of the defendant; that the stock, cattle, hogs, &c., were lawfully on the premises of the said ———— and of the said company, and being so were struck by the locomotive of the defendant, as hereinafter set forth; that is to say, on the ninth day of August, A. D. 1859, and at the county aforesaid, the defendant, whilst running their locomotive with a train of cars, attached negligently, struck five head of young steers, the property of the plaintiff, and at the place aforesaid, with its locomotive, and killed them, which steers were of the value of twenty dollars each, and of the entire value of one hundred dollars, whereby the value of the same was lost to the plaintiff. Wherefore, plaintiff sues, and asks judgment

for the value of the same, together with fifty dollars damages and his costs in this behalf."

It is contended by the appellant's counsel that the petition was intended to show, but failed in showing, against the appellant a statutory cause of action under the 52d section of the general railroad law, and that because of the failure the petition is bad and insufficient to support the judgment. It is clear enough the petition is short of showing any liability on the appellant under the provisions of the 52d section, and it is equally clear that in drawing the petition the pleader thought his case in someway affected by that section; yet we are not led to the same conclusion from these considerations as that arrived at by the appellant's counsel. All the matter in the petition that relates to the *locus in quo*, and to the duty of the appellant to fence its road, and to its omission to do so, may be stricken out, and still leave allegations enough to make a good cause of action at common law. And it is well settled, that in such case the irrelevant matter may be disregarded and stricken out as surplusage. (1 Chitty's Pl. 262, 3; Crocker v. Mann, 3 Mo. 472.) Stripped of the redundant matter, the petition makes out a clear case of actual negligence, for which the appellant would have been answerable in damages at common law. There was, therefore, no fault in overruling the motion in arrest.

2. As to the instructions given by the court, of its own motion. The following is the evidence in the case, bearing upon the question of negligence : Harman Hollyman, on the part of the respondent, testified, that "he was sitting in his house, within a few feet of the railroad, when hearing a very fierce, sharp and unusual whistle of the locomotive of the train running west, he instantly ran to the road, and looking down the track, in the direction of the approaching train, saw some cattle going up and some down, in front of the locomotive. The train was running at a good rate of speed. On going to where he had seen the cattle he found five head, three dead, and two crippled so badly they could not walk." Further testifying the witness said: "The track here is

straight, and the engineer could have seen the cattle on the track for one mile ; I suppose the whistle was to procure the putting down of the brakes ; the train did not check up ; the engineer did not ring the bell, nor blow the whistle, before the cars crossed the State road, a few yards beyond where the cattle were struck ; when I first saw the cars they were running at a high rate of speed, and did not stop."

In this condition of the evidence, the court gave the instructions complained of as follows :

1. " If the jury believe, from the evidence in the cause, that defendant's locomotive struck, killed and wounded the stock of the plaintiff, and that such striking was the result of carelessness or negligence of the agent or agents of the defendant, they should find for the plaintiff, and give him such damages as will compensate him for the loss he has sustained. But if they believe, from the evidence, that the injury so done was not at all the result of any carelessness or negligence of said defendant's agents, or any one of them, but was inevitable if care and diligence had been used by the defendant's agent or agents, then they should find for the defendant."

2. "If the jury believe, from the evidence, that the defendant used reasonable and ordinary care in endeavoring to drive said stock off the track before they were struck by the locomotive, such care as a man of ordinary prudence would use to save his own property from damage, they should find for defendant."

These instructions, in our opinion, give an exposition of the law as favorable to the appellant as under the evidence in the case it could reasonably ask.

3. The third and last ground of error which we are called to consider, is the refusal of the instructions asked by the appellant. All these, except the first and sixth, seem to have been asked under a total misapprehension of the nature of the case on trial. They are based upon the notion that the verdict of the jury was to be controlled by the question whether the road was fenced or not, and by the question as

to whose duty it was to fence ; whereas the question submitted to the jury, on the pleadings and evidence, was whether the appellant had been guilty of actual negligence, unaffected by the consideration whether the road was or was not fenced, or whether it was the duty of the appellant or any one else to fence. The instructions, then, upon the subject of fencing were out of place and inapplicable to the case, and properly refused.

The first of the series of instructions asked by the appellant proposed to limit the liability of the appellant to such injury to the cattle as was committed within the enclosed field of Hollyman. There was nothing in the issues which rendered it material whether the injury was committed within or without the enclosure. The sixth instruction asserts the proposition, that "if the person in charge of the locomotive which struck said stock tried to scare said stock off the track by blowing the whistle, this was the exercise of reasonable care and diligence, and exonerated the appellant." According to this, there is no obligation on the engineer to check the speed of his train, however practicable and full of promise, and the full measure of his duty is discharged by a blast of his whistle, as well when the train is so near that the destruction of the animal is inevitable, as when so distant that the means might prove efficacious. The instruction was clearly wrong, and was properly refused.

Let the judgment be affirmed. The other judges concurring.