DICKSON v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

DIVISION TWO.

1. **Practice** : INSTRUCTION : ASSUMPTION OF FACT. The assumption in an instruction of a fact of which there is some proof and no controverting evidence will not constitute reversible error.

2. **Negligence** : INSTRUCTION : PROXIMATE CAUSE. An instruction in an action against a railroad for personal injuries, which tells the jury, that if they found the injury was caused by the failure of defendant to station a watchman at the crossing in question, the defendant was liable unless the plaintiff was guilty of negligence, directly contributory to the accident, is not erroneous because it does not require that the absence of the watchman must have been the direct and proximate cause of the accident.

3. ——— : CITY ORDINANCE : WATCHMAN. The object of a city ordinance, in requiring railroads to station a watchman at street crossings used by them, is to prevent travelers from going on the crossing when trains are approaching, and not to give warning of danger when it is too late to avoid it.

4. ——— : RINGING BELL : QUESTION FOR JURY. Whether a bell of a locomotive was ringing is, in a case of conflicting evidence, a question for the jury, and the supreme court will not disturb its finding thereon, even where it appears to be against the weight of the evidence.

5. ——— : ALLEGATIONS AND PROOF. Evidence that the company's servants in charge of the train discovered plaintiff's peril in time to have averted the injury is admissible under the averments of the petition, that the defendant's agents negligently moved and managed the train by which the injury was occasioned.

6. ——— : SURROUNDING CIRCUMSTANCES. Whether or not a person's acts constitute negligence must be determined in view of the surrounding circumstances.

7. Contributory Negligence. The question of contributory negligence in this case held to be one for the jury.

8. Negligence : DRIVER OF VEHICLE : INJURY. The negligence of the driver of a vehicle, he not being in the employment or under the control of the person injured while riding thereon, cannot be imputed to the latter.

*Appeal from the St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*B. Pike* for appellant.

(1) Defendant's demurrers to the evidence, at the close of the plaintiff's case and at the close of the whole evidence, should have been given. *Matti v. Railroad,* 32 Am. & Eng. R. R. Cases, 73 ; *Railroad v. Davis,* 32 Am. & Eng. R. R. Cases, 65 ; *Henze v. Railroad,* 71 Mo. 638 ; *Gurley v. Railroad,* 93 Mo. 450 ; *Rafferty v. Railroad,* 91 Mo. 37 ; *Harty v. Railroad,* 95 Mo. 368 ; *Field v. Railroad,* 76 Mo. 616 ; *Braxton v. Railroad,* 77 Mo. 458 ; *Collins v. Railroad,* 65 Mo. 232 ; *Waldheir v. Railroad,* 71 Mo. 514 ; *Collins v. Railroad,* 65 Mo. 230 ; Cooley on Torts, 679 ; Shear. & Red. on Neg., sec. 488. (2) the court committed error in admitting testimony as to there being no watchman at the foot of Gratiot street, and no flag displayed there at the time of the accident. *Railroad v. Goran,* 31 Am. & Eng. R. R. Cases, 170. (3) The instructions given at the instance of plaintiff were erroneous. *Stoher v. Railroad,* 91 Mo. 518 ; *Dowling v. Allen,* 88 Mo. 299 ; Cooley on Torts,

679 ; Shearman & Red. on Neg., sec. 488, and cases cited
under first point. ( 4 )  The court erred in refusing the
instructions asked by defendant.

*D. P. Dyer* for respondent.

(1)  The position taken by the appellant, that the
jury were legally bound to find that the bell on the
engine of the appellant was being constantly rung, is
without merit. *Murray v. Railroad*, 101 Mo. 236, 242.
( 2 )  The facts of the case do not conclusively establish
contributory negligence on the part of either the driver
or of the plaintiff; they do not even establish *prima
facie* proof of such negligence.  But, if the driver had
been negligent, the plaintiff would not have been
affected thereby. *Beck v. Railroad*, 13 S. W. Rep.
1053, and cases cited ; *Land Co. v. Mingea*, 89 Ala. 521,
and cases cited; *Mills v. Armstrong*, L. R. 13 App. 1 ;
*Borough of Carlisle v. Brisbane*, 113 Pa. St., pp. 552,
553. ( 3 )  The levee or First street and Gratiot street
were cross or intersecting streets within 'the meaning of
the ordinance. *Wilkins v. Railroad*, 101 Mo. 93. ( 4 )
The facts which rendered these streets cross or intersect-
ing streets were established by uncontroverted evidence,
and by the appellant's and the respondent's witnesses ;
they were assured and tacitly conceded by the counsel
on either side ; and the court could, therefore, with
propriety, assume the existence of them. *Bank v.
Hatch*, 98 Mo. 376 ; *Walter v. City*, 99 Mo. 647 ; *Pope
v. Kansas City, etc., Co.*, 99 Mo. 400.  Indeed, the court
might probably have taken judicial notice of these facts
in the absence of evidence. *Brady v. Page*, 59 Cal. 52 ;
*State v. Ruth*, 14 Mo. App. 228; *Pearce v. Longfit*, 101
Pa. St. 512. ( 5 )  The evidence sufficiently showed that
the absence of the watchman was the proximate cause
of the injury. *Murray v. Railroad*, 101 Mo. 236, 242 ;
*Wilkins v. Railroad*, 101 Mo. 103.  Indeed, the jury
were bound so to find. *Schlereth v. Railroad*, 96 Mo.

509. (6) It was not necessary for the plaintiff to plead that defendant's engineer saw, or by the exercise of reasonable care could have discovered, the plaintiff's peril in time to have averted the injury. That matter could be shown to obviate contributory negligence on the part of the plaintiff without being pleaded, and the evidence was used only for that purpose. *Kellny v. Railroad*, 101 Mo. 75; *Hilz v. Railroad*, 101 Mo. 56. And, if it had been necessary to plead it, the defendant is not in a position to avail itself of any failure of the plaintiff to plead it. *Hilz v. Railroad*, 101 Mo. 41. And, finally, in case it had been necessary to plead such default on the part of the engineer, the allegations of the plaintiff's petition are sufficiently broad to have rendered the claim available. *Sullivan v. Railroad*, 97 Mo. 113.

THOMAS, J.—This is an action for personal injuries. Respondent obtained judgment in the circuit court of the city of St. Louis for $3,875, and the defendant has appealed.

The allegations of the petition with respect to the cause of the injuries complained of are, in the first place, that these injuries are attributable to the carelessness and negligence of the defendant, its servants and agents, in the negligent and careless manner in which the engine and cars were managed and moved. The petition further sets out, as causes of these injuries, the violation of ordinances of the city of St. Louis, which contain the following provisions, namely : *First.* That it shall not be lawful for a corporation to run cars propelled in whole or in part by steam along or across any improved street, unless such corporation shall station at each cross or intersecting street a watchman, who shall display at the crossing of cars in the daytime a red flag, and in the night time a red light. *Second.* That it shall be unlawful for an engineer to run any car or cars along or across such street, unless such watchman is stationed

at each and every cross or intersecting street with said signals; and, *third*, that, whenever an engine shall be moving in said city, the bell of such engine shall be constantly sounded. The answer of defendant was a general denial, and a plea of contributory negligence on the part of plaintiff.

The facts are briefly these: The plaintiff and Francis Hanlon were in the employ of John O'Brien, whose place of business was at Main and Biddle streets, in the city of St. Louis. On December 13, 1887, they were on a wagon, which was in the charge of, and being driven by, John Murphy, a driver for O'Brien. To this wagon was fastened a smokestack, which was about twenty feet long, and thirty-six inches in diameter, and the wagon was taking the plaintiff, Hanlon and the smokestack from said O'Brien's place of business to the Iron Mountain depot, which was on the levee, a short distance below Gratiot street, and for this purpose was being driven southwardly down the west side of the levee in said city. Murphy sat in front and did the driving, while the plaintiff and Hanlon sat on the smokestack, the plaintiff at the front, and Hanlon at the rear, end.

While the wagon was being thus drawn southwardly down the levee, and when it had come within a very few feet of the crossing of Gratiot street, an engine came from the south and stopped near that crossing. The levee was covered with quite a number of railroad tracks. The westernmost was that of the defendant. In driving down the levee to the Iron Mountain depot, a wagon would have to go along that side of the levee, which lay west of the track of the defendant. The space left to the west of the track, and in which the wagon would be driven, was forty feet wide for the most part, but narrowed towards Gratiot street, until at the corner of that street, on the north side, it was only five feet from the curbstone to the track. When Murphy saw this engine he stopped the

wagon and he, plaintiff and Hanlon watched its move-
ments. The engine finally stopped. When Murphy
saw that, owing to the engine in front of him, he
could not cross the levee as he had intended, he con-
cluded to turn into Gratiot street, and proceeded to do
so. In so doing, his wagon necessarily came upon the
track, and was struck by the defendant's engine, which
came from the north or rear of the wagon, and by this
collision the plaintiff suffered injuries, and it is for these
that he sued and recovered in this action. It is con-
ceded that the evidence shows that defendant had no
watchman at the crossing when and where the accident
occurred. The ordinance referred to in the petition
was read in evidence.

At the instance of plaintiff, the court instructed the
jury as follows: "1. If the jury find from the evi-
dence that Gratiot and First or Levee streets, where the
two intersect, were improved on each and every side of
the railroad tracks extending along said First or Levee
street, by being macadamized or otherwise improved
with such other material usually used in the construc-
tion or reconstruction of streets, then it beca. �662 the
duty of the defendant to station a watchman at the
intersection of said streets, and a failure to do so would
be negligence on its part, and, if you find that the
injury complained of by plaintiff was caused by such
negligence on the part of the defendant, then the plain-
tiff is entitled to recover in this action, if you further
find from the evidence that neither the plaintiff nor
the driver of the wagon on which he was then riding
was guilty of such negligence as directly contributed to
the accident that caused the injury.

"2. If the jury find from the evidence that the
defendant's agents and servants in charge of the engine
that struck the wagon upon which plaintiff was riding
did not, while said engine was in motion, constantly
sound the bell thereon, and that in consequence thereof
the injury complained of was occasioned, then the

plaintiff is entitled to recover, unless you shall further find that the plaintiff or the driver of the wagon was guilty of such negligence as directly contributed to the accident that caused the injury.

"3. If the jury find for the plaintiff they will assess the damages at such sum as they may believe from the evidence will compensate him for loss of time, expense incurred for medical attendance, and all mental and bodily pain and anguish he has suffered, together with such sums as will compensate plaintiff for any permanent injury or incapacity (if any) they may believe from the evidence he has sustained by and from such injuries so received and resulting directly therefrom.

"4. Although you may believe from the evidence that the plaintiff and the driver of the wagon, upon which plaintiff was at the time of the accident riding, were guilty of negligence in going upon the railroad track, yet if you further find from the evidence that the danger in which the plaintiff was thus placed was discovered, or by reasonable diligence could have been discovered by the person in charge of the engine in time to have prevented the accident, then the plaintiff is entitled to recover in this action notwithstanding such negligence on the part of the plaintiff or the driver of said wagon."

To the giving of which instructions and each of them defendant at the time excepted. The defendant prayed the court to give the following instructions:

"The court instructs the jury that under the pleadings and all the evidence in this case plaintiff is not entitled to recover."

"The court instructs the jury that they will disregard all the evidence offered by plaintiff as to there being no watchman at the foot of Gratiot street."

Which instructions the court refused to give, to which action of the court defendant at the time excepted.

The defendant asked, and the court gave, the following instructions: "5. The court instructs the jury that if they believe from the evidence that the driver in charge of the wagon on which plaintiff was riding at the time of the accident did not constantly look both north and south to ascertain whether an engine or train was approaching on the track on which the wagon was struck, and did not listen for the sound of a bell or whistle thereon, and plaintiff got upon said track and was struck in consequence of such failure to look and listen, then plaintiff cannot recover in this action.

" 6. The court instructs the jury, that if they believe from the evidence that plaintiff at the time of and immediately before the accident did not constantly look both north and south to ascertain whether an engine or train was approaching on the track on which the wagon on which he was riding was struck, and did not listen for the sound of a bell or whistle thereon, and got or went upon said track and was injured in consequence of such failure to look and listen, then plaintiff cannot recover in this action."

I. Four specific objections to instruction, numbered 1, are urged upon our attention: *First*. That there was no evidence that Gratiot street intersected the levee, or that the levee was a street at all, and hence the ordinances of the city did not require defendant to keep a watchman at the point where the injury occurred. *Second*. That the instruction assumes that the levee is a street, and that Gratiot street intersects it. *Third*. The instruction is defective in not telling the jury that the absence of the watchman, in order to constitute action-able negligence against defendant must have been the direct, proximate cause of the injury, and, *fourth*, that the injury did not occur on the crossing, and for that reason the principle of the instruction did not apply. The case seems to have been tried by both parties upon the theory that the court, jurors and attorneys knew the exact *status* of the levee as a public thoroughfare,

and its relation to Gratiot street. It is alleged in the petition to be a street and that Gratiot street intersects it, and the defendant makes no special denial of this, but rests its defense on a general denial and a plea of contributory negligence.

Witness Dogwell, a civil engineer, made measurements and a plat of the *locus in quo*, which were given in evidence, but the plat is not in the record. What this showed we are left to conjecture. But the engineer who made the plat testified that the foot of Gratiot street and adjacent levee are improved, reconstructed with granite; that the streets above the intersection of Gratiot street and the levee are improved streets on both sides of the railway track.

During the trial the attorneys for both parties as well as the witnesses speak of the levee as a street and the junction of Gratiot street and the levee as a crossing. It is true defendant objected to the reading of the ordinances in evidence on the ground there was no proof that there was any crossing at the point of the accident, but defendant's attorney after this assumes in the questions put to the witnesses that there was a crossing there. We think this evidence, and the manner in which it was elicited, justified the court in assuming that the levee is a street and that Gratiot street intersects it. The trial occurred in the city of St. Louis, and defendant's counsel seems, by his examination of witnesses, to have conceded this fact, which no doubt was well known to all parties connected with the trial. The court assumed no more in the instructions than defendant's counsel assumed in the conduct of the trial.

Where it is manifest that a fact exists, the court would not be justified in granting a new trial simply to permit a party to make more elaborate proof of it. From this record we feel satisfied beyond a reasonable doubt that the levee is a street, and that it is intersected by Gratiot street. The assumption in an instruction of

a fact, of which there is some proof, when there is no countervailing evidence as to that fact, is not reversible error. *Bank v. Hatch*, 98 Mo. 376; *Carroll v. Railroad*, 88 Mo. 239; *Walker v. Kansas City*, 99 Mo. 647; *Pope v. Railroad*, 99 Mo. 400.

Nor was this instruction defective in failing to tell the jury that defendant was not liable in this action unless the absence of a watchman at the crossing was the direct, proximate cause of the injury. The instructions must all be read together and construed as a whole. The instruction under review told the jurors that, if they found that the injury " was caused" by the failure of defendant to station a watchman at that crossing, the defendant was liable unless the plaintiff or the driver of the wagon on which plaintiff was riding was guilty of negligence also, which directly contributed to the accident. And on the part of the defendant the court instructed the jurors that plaintiff could not recover if he failed to look constantly both ways for approaching trains and to listen for the sound of a bell or a whistle, and he was injured in consequence of such failure. Taking the instructions, therefore, as a whole, it seems clear that the jurors could not have misconstrued the word " caused" in its relation to the facts of the case and the issues as presented by the court. If the defendant's negligence caused, and plaintiff's negligence did not directly contribute to, the injury, it follows logically that it was the direct and proximate result of defendant's negligence.

It is insisted that this instruction ought not to have been given, because the evidence shows that the wagon was not on the crossing at the time of the accident. This contention is untenable. The evidence shows that the wagon stopped from fifteen to forty feet north of the crossing, in order that the party in charge of it might ascertain whether the switch engine in front of him would interfere with his progress. When he saw that this engine had stopped, he drove his wagon four or

five steps before the collision occurred.   This must have brought him very near the crossing, and it was his evident intent, indeed it was necessary for him, to go upon the crossing to turn up Gratiot street.   The object of requiring a watchman to be stationed at the intersection of the improved streets of the city is to prevent travelers from going upon the crossing when trains are approaching.   *Wilkins v. Railroad*, 101 Mo. 93.

It would be a work of supererogation to station a watchman at a point to give warning of danger after it is too late to avoid it.   It is the duty of such watchman to keep the crossing clear at times of danger from moving trains.   If one had been at the intersection of Gratiot street and the levee at the time of this collision, it would have been his duty to give plaintiff and the driver of the wagon warning of the approaching train, before the wagon was driven onto the crossing; and hence the jurors might very well find that the injury occurred because no watchman was there at the time. The failure' to station a watchman at a crossing when required by ordinance has been held negligence *per se*. *Schlereth v. Railroad*, 96 Mo. 509; *Wilkins v. Railroad, supra; Murray v. Railroad*, 101 Mo. 236.

II.   Defendant contends that there was no evidence in the case justifying the giving of instruction, numbered 2.   We confess that the preponderance of the evidence seems to be in favor of the proposition that the bell was constantly sounded.   The plaintiff and Murphy testified that they heard no bell, and they were in a position to have heard and could have heard it, if one had been rung, and Hanlon said he heard no bell.   Plaintiff also called Mohoney, defendant's engineer in charge of the engine that caused the injury, and he testified that the bell was constantly rung from the time he left Union depot till the accident occurred.   Pat Carr, the fireman of the colliding engine, and Thomas Kick, foreman of defendant's levee crew, called as witnesses by defendant, testified that the bell was rung all the way down from Poplar street to Gratiot.

The weight of the evidence on this issue seems to us to be on the side of the defendant.    Where the witnesses are of equal credit, positive evidence that a signal was given is as a general rule of more weight than that of witnesses who say they did not hear it.    Much depends upon the position, attention and credibility, however, of the witnesses, and the ultimate question, whether the signal was given or not, is one of fact for the jury.    There was some evidence that the bell was not rung, and this issue was properly submitted to the jurors, and in this conflict of evidence the lower court did not, and we think we ought not to, interfere with their finding.    *Murray v. Railroad, supra.*

III.    It is contended again that there is no allegation of the petition which authorized the giving of instruction, numbered 4, *supra*.    The allegation is that the injuries inflicted on plaintiff were "solely attributable to the carelessness and negligence of the defendant, its servants and agents, in the negligent and careless manner in which said engine and cars were managed and moved."    This is a substantive, independent averment, not connected with the other charges of negligence contained in the petition, and was broad enough to admit evidence that the agents of defendant in charge of the colliding engine discovered plaintiff's peril in time to have avoided the injury and failed to do so.    Evidence having been adduced on this issue, the court committed no error in giving the instruction under review.    Bliss Code Plead., sec. 211*a ; Ellet v. Railroad*, 76 Mo. 518; *Garner v. Railroad*, 34 Mo. 235 ; *Goodwin v. Railroad*, 75 Mo. 73 ; *Schneider v. Railroad*, 75 Mo. 295 ; *Mack v. Railroad*, 77 Mo. 232.    We know the principle of these decisions has been, by the later deliverances of this court, somewhat restricted in its application. *Crane v. Railroad*, 87 Mo. 588 ; *Gurley v. Railroad*, 93 Mo. 445.    But we do not deem these antagonistic to the position assumed.    *Sullivan v. Railroad*, 97 Mo. 113 ; *Pope v. K. C. C. Co.*, 99 Mo. 400.    The *allegata* and

*probata* corresponded in the case at bar. The averment is that the defendant's agents negligently moved and managed the train, by which the injury was occasioned. The proof is that the engineer discovered plaintiff's peril in time to have stopped the train and avoided the collision by the exercise of ordinary care, but failed to do it.

We will add, that we have not in this examination overlooked the case of *Waldhier v. Railroad*, 71 Mo. 514. There the court held, and properly held, that the plaintiff, under an allegation of the negligent management of trains, could not introduce evidence of a defective frog in the track.

IV. This brings us to the consideration of the contention of defendant that the court ought to have sustained a demurrer to the evidence. What we have already said renders it unnecessary to add anything in this place in regard to the evidence of the negligence of defendant's servants in managing the train, and of defendant itself in not stationing a watchman at the crossing in question. It only remains for us to determine whether the proof shows that plaintiff was guilty of such contributory negligence that the court ought to declare, as a matter of law, that he cannot recover. The evidence shows that Murphy was driving the wagon upon which there was a boiler twenty feet long and thirty-six inches in diameter; that plaintiff was sitting in the front end of this boiler; the wagon was driven down to within a few feet of the crossing and was stopped because a switch engine approached the crossing in front of them; the parties on the wagon were all watching this engine, which prevented Murphy from driving across the street as he had intended to do, and determined him to turn into Gratiot street; that the defendant's western track approached so near the curb at the corner of Gratiot street and the levee it was impossible for the wagon to pass into Gratiot street without running over defendant's track; that Murphy moved his

wagon four or five steps in attempting to pass into Gratiot street when the collision occurred. The plaintiff was sitting in the boiler, so that, by looking backwards through it, it is probable he would have seen the train that caused the injury in time to have jumped from the wagon and got out of the way. We think this state of facts presents a case in which the court cannot assume, as a matter of law, that plaintiff was guilty of such negligence as directly contributed to his injury.

A man's acts must be judged by the concomitant circumstances. His environment must be taken into the account, and we cannot assume that plaintiff's conduct in this case did not conform to ordinary prudence. The court properly left it to the jury to say whether plaintiff was guilty of negligence which directly contributed to his injury. Indeed, the court went further than the correct rule of the law warrants in the limitation of plaintiff's right of recovery on the score of contributory negligence. The jury was told in the first instance that if he or the *driver of the wagon was* guilty of negligence which directly contributed to the accident, there could be no recovery. The negligence of the driver in this case, he not being in the employ or under the control of plaintiff, cannot be imputed to plaintiff. This seems to be now the settled doctrine in England and the United States. *Becke v. Railroad*, 102 Mo. 544; *Land Co. v. Mingea*, 89 Ala. 521; *Borough of Carlisle v. Brisbane*, 113 Pa. St. 552; *Mills v. Armstrong*, L. R. 13 App. Cas. 1. In the second place the instruction predicated plaintiff's right of recovery on the condition that he *constantly looked both ways* for approaching trains. It is not possible for a man to look *constantly* both ways, and the law does not require it. But as both of these errors were favorable to defendant, it, of course, has no right to complain.

Upon the whole, we think the case was fairly tried. Judgment affirmed. All of this division concur.