### L. S. & M. S. R. R. Co. v. CHRISTIAN EHLERT, ADMR.

1. NEGLIGENCE AT A RAILWAY CROSSING.

It is negligence for a person having approached a railway crossing where the gates have been lowered, to stand, while waiting for a train to pass on one track, in such close proximity to another track, on which trains are known to be operated, as to be within reach of a passing train, or to attempt to walk across the tracks after the gates are lowered.

2. RECOVERY NOTWITHSTANDING CONTRIBUTORY NEGLIGENCE.

Although a person may have been guilty of negligence in placing himself in a dangerous position, in which he was liable to be injured by passing trains, yet if the employees of the railway company in charge of an approaching train knew of his danger, or might have known by the exercise of ordinary care, in time to protect or save the life of such person, the negligence of the railway is the proximate cause of the injury and a recovery may be had.

3. FACTS TO WHICH RULE MAY BE APPLIED.

In an action for wrongful death, where the evidence clearly shows that deceased, having approached a railway crossing, after the gates were lowered, took a position so near another track as to be within reach of a passing train, and that he remained in that position until he was killed, and the evidence also shows that the employees of the railway company in charge of the train saw him, or could·by the exercise of ordinary care have seen him for a distance of 150 feet from where he was killed, the rule stated in the preceding paragraph may be applied; and the question in such case, whether the railway company was negligent in failing to sound the whistle in time to warn deceased of his danger and save his life, was properly submitted to the jury, although deceased was guilty of negligence in getting near or on the track.

4. RULE SHOULD BE APPLIED WITH GREAT CAUTION.

The rule that a recovery may be had where defendant's negligence was the proximate cause of the injury, notwithstanding contributory negligence upon the part of plaintiff's decedent, should be given with great-caution: in many cases, where the time for action is short, and the principle is so vague and uncertain, it would be misleading, but under the facts stated in the preceding paragraph it was properly given.

5. CONSTRUCTION OF ORDINANCE AS TO NEW CONDITIONS.

A trial judge, in such an action, is not required. unless specially requested, to construe an ordinance with reference to a condition not apprehended by the terms of the ordinance itself. Therefore, an omission to construe an ordinance providing that gates at a railway crossing shall be raised after one train has passed before allowing another to pass, with reference to its effect where·it is claimed that trains were passing simultaneously, in opposite directions, or to state that, under the ordinance, trains might be permitted to pass in that manner, is not error, particularly where the evidence is conflicting as to whether the trains did pass at the same time.

6. DUTY OF RAILWAY COMPANIES AT CROSSINGS.

A statute law requiring gates at railway crossings does not prescribe the full duty of railway companies at certain crossings; and does not relieve such companies from duties which they owed the public before the statute was passed.

**7. NOT DISCHARGED BY SIMPLY OPERATING GATES.**

The duty of a gatekeeper at a railway crossing is not, therefore, fully discharged by merely operating the gates; he is required to exercise ordinary care in keeping watch of approaching trains and to give such warning as ordinary prudence would require; and if such gatekeeper sees a person in danger from an approaching train it is his duty to warn him, and a failure to do so is negligence for which the railway company is responsible.

**8. NEGLIGENCE IN RUNNING A BELATED TRAIN.**

Running a railroad train, not on schedule time and when people could have no knowledge of its coming, over city crossings at the rate of from twenty-five to thirty miles an hour, is, in itself, great negligence.

**9. EVIDENCE—ORDINANCES NOT PLEADED ADMISSIBLE.**

Ordinances in relation to the duties of a railway company in relation to the speed of trains and regarding gates at crossings are admissible in evidence, in an action for wrongful death, although they are not pleaded.

**10. RULE AS TO COMPUTING DAMAGES.**

It is proper for the trial judge, in an action against a railway company for wrongful death, to instruct the jury that, if plaintiff is entitled to recover, the jury should not take into consideration any solace or bereavement or suffering by way of bereavement, or matters of that kind, but should only consider the pecuniary loss to the family.

**11. REFUSAL TO GIVE WHEN NOT REQUIRED.**

A failure, however, to give the charge referred to, upon request of the railway company, does not constitute reversible error unless, from other portions of the charge, the jury may have been given to understand that they might give damages outside and beyond the pecuniary loss.

**12. WORDS "PECUNIARY," "SOLACE" AND "BEREAVEMENT."**

The words "pecuniary," "solace" and "bereavement," as applied to such cases, are terms which might not be fully comprehended by a jury, and, if requested, an explanation thereof should be given in the charge.

**13. WORD "PECUNIARY" NOT MISLEADING.**

Used alone, in reference to the measure of damages, or in passing upon requests, the word "pecuniary" is not so technical or incomprehensible as to mislead a jury.

ERROR to the Court of Common Pleas of Cuyahoga county.

CALDWELL, J.

The case of the Lake Shore & Michigan Ry. Co., plaintiff in error, against Christian Ehlert, administrator of the estate of Christian Holtz, defendant in error, is an action brought in the court below by Ehlert, the administrator of Christian Holtz, against two railroad companies, the Lake Shore, and what is familiarly known as The Big Four, for causing the death of Holtz. It occurred at Barton St., in this city, where the Big Four road crosses Barton street, and the Lake Shore has the privilege from the Big Four to run certain trains over the tracks that pass over Barton street. The train was passing over the street on the northerly track. The gate is at the south side of the tracks. At about the time at which this train was to pass over the north track, the gate was lowered and at about the same time Christian Holtz and his wife appeared at the crossing on the street. They took a position between the gates and the railroad tracks, and a position very near to the south track, and stood there while a freight train was passing over the north track A Lake Shore train coming in on this track was late—just how late we are not informed—and while Christian Holtz was standing and at the moment when the freight train either had passed the street crossing or was just about passing—the caboose on the end was either passing or had

passed—Christian Holtz either stood so close to the south track that this belated Lake Shore train coming at a very rapid rate of speed for the place in which it was running in the city, either struck him as he stood too close to the track, or struck him as he was about to move forward or had just commenced to move forward to cross over to the tracks on the other side, and killed him; and this action is bought to recover compensation to the family. A judgment was obtained in the court below, and the Lake Shore road files a petition in this court with a bill of exceptions setting out all the testimony, and the Big Four road files a cross-petition. Both railroads ask to have the case reversed.

It is claimed in this case, that if this verdict must stand by reason of the fact that Christian Holtz was not guilty of contributory negligence, then it is wrong and should be reversed; that his standing where he did, in so close as to be hit, or, as it is claimed, undertaking to cross at the time when he could have seen the Lake Shore train approaching, in either case, was such contributory negligence that he could not recover in this case. And it is urged that it is true, that however careless the Lake Shore company may have been in running its train at a rate of twenty-five to thirty miles an hour in the city, within the city limits, and at a place such as this was at a street crossing—that, however negligent that railroad company may have been, and whatever negligence there may have been on the part of the other road, if the plaintiff below was guilty of contributory negligence he cannot recover in this case, however negligent the servants of the two railroads may have been.

We have no doubt in this case, but that Christian Holtz, standing where he did, or attempting to walk across the railroad tracks, whichever he was doing, and the testimony leaves it in doubt, was guilty of contributory negligence. There cannot be any doubt, but that, if he had looked, at a reasonable time before he was struck, he would have seen this Lake Shore train approaching him; but that, it is contended, does not entirely determine this case.

There are questions beyond that: and it is altogether likely that the jury brought in their verdict in favor of the plaintiff below upon grounds asserted.—upon law given to them by the judge, involving the conduct of these parties—these two railroad companies—after he (Holtz) had placed himself in a position of danger; and it is claimed that the court, in giving that law, erred; and, with other errors assigned, I will proceed to notice them.

It is contended that the court erred in failing to give the request to charge, made by the Lake Shore company. The court trying the case, charged the jury that the damages which it could give in the case, if it should come to the point of awarding damages, must be damages for pecuniary loss to the family. A request was made by the Lake Shore company that the court say to the jury, that, in making up the amount of damages, if they should find that the family was entitled to any damages at all, they could not take into consideration any solace or bereavement, or suffering by way of bereavement, and matters of that kind, but could only take into consideration the pecuniary loss to the family.

The court did not give that request. It was a very proper request to give, and it would have been well for the court to have given it. The words, "pecuniary," "solace" and "bereavement," as applied in a case of this character, are terms not altogether fully comprehended by a jury, and a little explanation, if it is asked for, or a clear distinction to be

made between the terms, if called for, is always proper for the court to give.

If this is error it is not error because the court did not give the law correctly, but it is only error because the court misled the jury, or left the jury in such a way, in its charge, that the jury might understand that it could give damages outside and beyond that of the pecuniary loss. Now we find nothing in the court's charge that would warrant any jury in believing that such was the intention or the thought of the judge in anything that he said, and the word "pecuniary" is of not such an incomprehensible nature or technical in its meaning that a jury might not comprehend it. If these requests, as presented or read to the jury, in the presence of the jury—the law presented in these—draw the distinction. closely between "solace". and "pecuniary loss" so that if the court openly refused, after the requests were made, in open court, it was of something that the jury would clearly understand the difference between the two terms. It was not so read, and we think there was nothing in it, although properly read.

We think the charge, as given, was not misleading, and is not such error that the case should be reversed for; it is not prejudicial.

Ordinances were introduced: One as to the rate of speed of the train in passing over the crossing; another, as to the tie of lowering the gate,—lowering it while one train is passing and raising the gate after that train has passed to give persons waiting, an opportunity to pass over, and then, if necessary, lower it for another train, but, between trains, giving an interim for persons waiting to pass over the tracks.

Those two ordinances were read, and it is claimed that there was error in admitting an ordinance that was not pleaded. We find no error in it.

It is claimed that the court's construction of the ordinance as to the trains passing, as applied to this case, was erroneous.

The court construed the ordinance exactly as it is given. There is but one way to consttrue that ordinance: That when one train passes, the gates are to be raised, and people are to be allowed to pass. If another train is to pass, it must wait until the people have passed over; then the gates are to be lowered and that train allowed to pass.

It is claimed that these two trains were both passing at the same time; and that the court should have said to the jury that the ordinance, as it is written and printed, will permit two trains to pass at the same time, going in opposite directions.

The evidence in this case, as I have already said, was conflicting as to whether both trains were at the same time passing over this crossing; and it was a matter proper to have been left to the jury. But if the court had been called upon by a request to say that under these ordinances two trains might pass at the same time, either in the same or opposite directions, if they both passed substantially at the same time, if the court had been requested to charge that, the court, undoubtedly, would have done so. But the court construed the ordinance properly as it is written. The fact that the ordinance itself does not apprehend such a state of facts as was claimed by the railroad to exist in this particular case—that being true, the court was not bound in construing the ordinance, to go beyond it. All that the court was required to do if its attention was called to it by special request, was to either say or not say to the jury that two trains might pass of they passed substantially at the same time. We find no error in either the introduction or construction of the ordinance.

The next error complained of is certain language used by the court in its charge to the jury.

"Further I say to you, gentlemen, that although the decedent may have been guilty of negligence in putting himself in a dangerous position, a position in which he was liable to be injured by the passing of the trains, yet if the employees of the railroad company in charge of said passenger train knew of his danger, might have known of his danger, by the exercise of ordinary care, and, by the exercise of ordinary care thereafter, controlled and stopped and managed the train in such a manner as to save the decedent from the injury and from death, it was their duty to do it, but, if they failed to do it, under such circumstances, that failure would be the proximate cause of the death, and not the negligence in getting into or going into a place of danger."

I have already said that Christian Holtz was to blame in part of his own death. He was guilty of contributory negligence.

Now, here is a proposition in law, given by the court to the jury, saying to them that notwithstanding a party may contribute to his own injury, yet if his negligence can be seen and known by the defendant in time to protect him or save his life and it fails to do it, then such negligence of the defendnat is the proximate cause, and that of the plaintiff is the remote cause, and the party may recover.

That is the proposition. So that, although Christian Holtz stood so near as to be hit and did not watch for the train, or started to cross when he could have seen the train approaching, notwithstanding that negligence on his part, if the railroad company saw or could have seen him in time to have saved his life, it was their duty to do it, and, failing to do it, that negligence on the part of the company would be the proximate cause and the party might recover.

This is a proposition that has undergone a vast amount of discussion by the courts. A large number of states hold it to be the law. The United States court holds it to be the law, and, as we understand it, this state holds it to be the law.

In Railroad Co. v. Kassen, 49 Ohio St., 230, there was much discussion as to whether that case settled this principle of law or not. But a case went from this county to the Supreme Court, that involved the question fairly and squarely, and the Supreme Court affirmed the opinion of this court or affirmed the case wherein this had allowed a charge of that nature to stand.*

We think that has settled the law of Ohio, and that this is a proper charge if the facts warrant it.

Now the only question that can be made is, whether the facts in this case would warrant that charge or not. The evidence of the wife, when weighed carefully, seems to show clearly, and we believe it is true, that Christian Holtz, when he approached that crossing took a position so near to the railroad that the cross-beam of the engine would hit him. And we think a fair construction is that he stood there until he was hit. In that position he could not have seen this Lake Shore train coming on the south track, for a distance of at least 150 feet. The Lake Shore train could have seen him that distance; they could have seen his position of danger. If the Lake Shore had whistled at 150 feet off, it was for the jury to say whether he could and would have escaped. At least, there was an opportunity there to save the life of a man; and, either by not looking

* L. S. & M. S. Ry. Co. v. Schade, 8 Circ. Dec., 316; affirmed by Supreme Court, without report. See 57 O. S., 650.

out, or not whistling in time, or by some carelessness, Christian Holtz was struck.

The railroad company insists here, that if Holtz had looked to see this train coming, he would have seen it soon enough to have escaped from his position of peril. But his opportunity to see the train was no better than that of the employees upon the train to see him. So far as we know, they were the same. Yet the train did nothing at all until it got within sixty feet of him, and then whistled; it was too late; the train was running at from twenty-five to thirty miles an hour, and that would give a man but a moment to escape from his dangerous position, and it was too late for him then to escape.

Now, that was a matter peculiarly within the province of the jury. Here was a distance sufficient, we think, to give a ground upon which the court could give this principle of law to the jury.

There are many cases where the time is so short, the principle is so vague and uncertain, that it would be misleading for the court to give it to the jury. And it is a principle of law that the court should give it with a good deal of care and caution, for it always gives a jury a chance to award a verdict where a verdict should not be given.

The jury has said in this case, and evidently said upon this very question, if they have reasoned as we do upon the case, that here was an opportunity for the employees of the Lake Shore train to save the life of Holtz. They did not avail themselves of it, and that is premarily the cause of his death and, therefore, the company is liable. That the railroad company is not guilty of negligence, no one can contend for a moment. The train being late, out of time, so that people would not have any knowledge of when it was coming—to run over crossings in a city like this, at the rate of from twenty-five to thirty miles an hour, as the jury found, under special finding, that it was running, is a very great (I was going to say the grossest) act of negligence; but it is negligence. But, however negligent it was, if Holtz was also negligent, his estate cannot recover unless this second act of negligence, on the part of the railroad company, intervened at such a time as to make the negligence of Holtz not available; and that was left to the jury, and we feel that we cannot disturbe it. The law was correct, and this was a proper case in which to give it, as the majority of the court think.

The next error I will notice, pertains to the charge also:

The next charge is that the gate-keeper on that occasion failed to give any warning of the approach of this train to the decedent.

It is claimed that he stood there in vicinity of the gate and that he had an opportunity to know and should have known of the approach of that train and should have given warning to the decedent of its approach.

"I say to you that it was the duty of this gate-keeper to know of the time of the passing and crossing of trains upon the railroad track over that highway, and it was his duty by closing the gate—not only by closing the gate, but by giving such other warning as a person of ordinary prudence would give under like circumstances to pedestrains and others, of the approach of such trains; and it was his duty to exercise ordinary care to look out and keep watch of the approach of persons upon the highway to said railroad track, and to use ordinary care in warning them of the approach of trains and the dangers incident to using the crossing."

It is contended by the two railroad companies that this charge is erroneous, and the contention is simply this: The railroad companies

Railway Co. v. Ehlert.

say that when the statute of this state prescribes the puttng of gates at crossings like this, and the railroad has complied with that statute, it has exercised due care and caution.

It is claimed, on behalf of the defendant in error, that the passing of the statute removes from the railroad company no duty it owed to the public before the statute was passed, and prescribing a mode of exercising that duty or a duty for the railroad to perform, is not prescribing the full duty of the railroad company, but, as Elliot in his work says, it is prescribing the minimun duty of the railroad cumpany.

The statute, of course, cannot know nor understand all the circumstances of that character at different crossings in that state where gates are prescribed.

The ordinary circumstances, at the ordinary crossing, are taken into consideration in the passage of the statute. Now when extraordinary cicumstances exist, extra hazardous circumstances, then the question is, does the statute prescribe the full duty of the railroad company under all circumstances?

There are many cases holding that it does not prescribe the full duty of the railroad companies. I have collected just a few of these:

In Webb v. Portland & Kennebec R. Co., 57 Me., 117. There it was held that a proper regard for the security of human life imperatively requires them to make use of other and greater safe-guards than those which the legislature has deemed sufficient for ways in general, many of which are little frequented.

There is much more in that volume; and I will not read it.

In C. B. and Q. R. R. Co. v. Perkins, Admr., 125 Ill., 127. I read from syllabus (4): "Negligence—Flagman at railroad crossing—Duty not limited by statute. On the trial of an action against a railroad company to recover for an injury at a street crossing, the court allowed the plaintiff to prove the fact that the company had no flagman stationed at such crossing, without any proof that the city authorities had never notified the company that the flagman was necessary.

"Syllabus (5). It is the duty of a railroad company, in the running of its trains, to use ordinary care and prudence to guard against injury to the persons or property of those who may be traveling upon the pubic highway and have occasion to cross its tracks, whether the specific duty be prescribed by the statute or not. The fact that the statute may provide one precaution, will not releive the company from adopting such others as public safety and common prudence may dictate."

In Grand Trunk Ry. Co. v. Ives, 144 U. S., 408, I read only a portion of the syllabus:

"In an action against a railroad company to recover for injuries caused by the negligence of its servants the determination of the fact of whether the person injured was guilty of contributory negligence, is a question of fact for the jury.

"In such case if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured, an action for the injury cannot be maintained unless it further appear that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured parties negligence.

"In determining whether the injured party in such case was guilty of contributory negligence, the jury is bound to consider all the facts and

circumstances bearing upon the question, and not select one particular fact or circumstance as controlling the case to the exclusive of all others."

This is on both propositions; but I have read only as to the proposition I discussed before the one I am now discussing.

"The running of a railroad train within the limits of a city at a greater speed than is permitted by the city ordinance, is a circumstance from which negligence may be inferred in case an injury is inflicted upon the person by a train.

"Whether ordinary care or reasonable prudence requires a railroad company to keep a flagman stationed at a crossing that is especially dangerous is a question of fact for a jury; although in some cases it has been held to be a question of law for the court.

"Where the statutes of a state make provisions in regard to flagman at crossings, this court will follow the construction given to such statutes by its courts; and, so following the decisions of the courts of the State of Michigan, it is held that the duty to provide flagmen or gates, or other adequate warnings or appliances, may exist outside of the statute if the situation of the crossing reasonably requires it.

In Wilkins v. Railway Co., 101 Mo., 93, I will read from the syllabus:

"(1) Municipal ordinances prescribing certain precautions to be observed by railroads in using its street crossings do not absolve them from the exercise of ordinary care in other particulars not mentioned in the ordinances but required by the general law of the land to avoid injury to those using public crossings where the companies tracks are laid.

"(2) It is a part of the duty of a watchman at a public crossing to exercise ordinary care in warning persons on or near the crossing of any approach of danger from passing trains, and this is so although the ordinance prescribing the watchman only requires the presence of one at the crossing 'who shall display at the cars in the day-time a red flag and at night red light.'"

This case holds that although the ordinance requires the railroad company to place a flagman there and to display a flag, that that is not his whole duty; that if circumstances are such that further notice on his part is required, it must be given.

I cite but very few of these cases. There are many of them, and the cases are somewhat at variance upon this question. There are some states that hold that when the law prescribes a duty at the crossing upon the part of the railroad company, that that is the whole duty; but I think the better considered cases, and the majority of them, hold that the passing of an ordinance or statute or law absolves the company from no duty whatever that it owed before.

Now, as in Wilkins v. Railway Co., *supra*, about a flagman at a crossing, putting a flagman at a crossing, with a flag in his hand, that is notice to any one not to cross; the railroad tracks are there, and they must not cross; but that court has held that that is not his whole duty; that the circumstances of the case map out his duty. It may go far beyond that. Well, a gate is nothing more than a flag; it is a signal that the railroad track is being used the company and the crossing is not open for the public to cross; and that gate, as is the case with the flag, is nothing more than a notice; and it is not the full duty, as we think, of the railroad company under all the circumstances.

There has been much contention in the arguments in this case as to whether or not Railway Co. v. Schneider, 45 Ohio, St., 678, has decided

this question, and there seems to be uncertainty about it; but, in whatever the court said, whether it said what the plaintiff in error understands or that of the defendant in error, it was not a case where the court was undertaking to prescribe the full duty of the railroad and its watchman at a crossing like this. The court was not called upon to do it in the case.

The facts were, in that case: That the party was injured by reason of the railroad not observing the placing down of the gates, and there was no occasion for the Supreme Court to go beyond the one question: Has the railroad complied with the statute; not, has it complied with its full duty? That was not before that court, and, in using the language that the court has in the syllabus, we are satisfied that the exact question now before this court was not present in the minds of the court, or the language, as written, would not have been used. We think the question is an open one in this state, and the majority of the court are of the opinion that the law, as given in the charge, is the correct law to be given if the circumstances warrant is.

Now there is no such thing as law independent of facts. They are correlative, and the court, in charging as to what ordinary duty is, always charges that it is the duty under the circumstances existing and the object and purpose to be attained. Now did the circumstances in this particular case warrant this charge on the part of the court, or did they not? Here was this train late, and as trains that are late generally try to make up time, no doubt this train was doing the same. The flagman knew it was late; the flagman knew that it was liable to pass there at any moment; the party standing there knew nothing about it; the party standing there may have known that it was late, that it was time for that train to pass, may have known the fact that there was no particular danger of any train passing on schedule time at that moment. The circumstances are such, we think, that the gate-man was called upon to use more than ordinary care in regard to this belated train and if persons were seen there on the track, or near the track that they were liable to be hit by that train, it was that gate-man's duty to do more than simply put down that gate; and if he saw this party standing in a position of danger when he might have warned him either before or after the train was coming, the majority of the court think it was his duty to do it and failing in that duty, he has not exercised that degree of care towards the deceased that it was his duty to do, and the majority of the court are of the opinion that this charge was corectly given and that the circumstances of the case warrant it.

Now as to another objection that is raised to this charge, we think there is nothing in it. And as to the question that the judgment should have been entered for the railroad notwithstanding the general verdict of the jury, and this upon the general findings made by the jury, we think the court was not warranted in so entering judgment for the railroad. The judgment was correctly entered, and we find no error; that is, the majority of the court do not, and we affirm the judgment.

*Dickey, Brewer, Bentley* and *McGowan,* for plaintiff in error.

*M. A Foran, J. N. Weld* and *E. A. Foote,* defendant in error.